**ORGEUNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| YITZCHOK ROKOWSKY, on behalf of himself and all others similarly situated,<br><br>    Plaintiff,<br><br>  vs.<br><br>VERICITY INC., MEMBERS MUTUAL, FIDELITY LIFE ASSOCIATION, APEX HOLDCO L.P., ERIC RAHE, CALVIN DONG, SCOTT PERRY, RICHARD HEMMINGS, JAMES E. HOHMANN, JAMES SCHACHT, LINDA WALKER BYNOE, STEVEN GROOT, JOHN FIBIGER, and NEIL ASHE,<br><br>    Defendants. | Civil Action No. 1:20-cv-456<br><br>Hon. Andrea R. Wood |

**DEFENDANTS' MEMORANDUM OF LAW**
**IN SUPPORT OF MOTION TO DISMISS**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES……………………………………………………………ii

INTRODUCTION ........................................................................................................1

FACTUAL BACKGROUND ........................................................................................3

PLAINTIFF'S COMPLAINT .......................................................................................6

ARGUMENT ...............................................................................................................7

    I.     Standard of review. ..........................................................................7

    II.    The Complaint is untimely under the 30-day statute of limitations
          of the Illinois demutualization statute. .....................................................8

    III.   The Complaint challenges an Illinois Department of Insurance
          decision without following the Illinois Administrative Review Law. ..................10

         A.    Plaintiff has not plausibly alleged that the Department's decision was
               arbitrary and capricious or against the manifest weight of the evidence...10

         B.    Plaintiff cannot evade the requirements of the
               Administrative Review Law by recasting his attack on
               the agency's decision as common law claims..........................................13

         C.    Plaintiff has failed to follow the mandatory procedural
               requirements of the Illinois Administrative Review Law. .........................15

    IV.   Plaintiff's claims should also be dismissed for multiple claim-specific reasons...16

         A.    Plaintiff's breach of fiduciary duty claim should be dismissed because
               the Board did not have a fiduciary duty to members—and both the
               fiduciary duty and negligence claims should be dismissed under the
               business judgment rule.............................................................................16

         B.    Plaintiff's breach of contract claim should be dismissed
               because Plaintiff has not pointed to any breach.......................................18

         C.    Plaintiff's unjust enrichment claim should be dismissed
               because the parties' relationship is governed by contract..........................19

          D.    The claims against the Defendants who could not have owed any duty
               to Plaintiff should be dismissed as legally and factually implausible. ......20

CONCLUSION ...........................................................................................................20

# TABLE OF AUTHORITIES

**Cases**                                                                                       **Page(s)**

*American Nat'l Bank & Tr. Co. v. City of Chicago*,
   478 N.E.2d 1 (Ill. App. Ct. 1985) ............................................................................9

*AMGRO, Inc. v. Lincoln Gen. Ins. Co.*,
   2008 WL 11409046 (D.N.J. Mar. 17, 2008), *aff'd*, 361 F. App'x 338 (3d Cir. 2010)............19

*Amundsen v. Chicago Park Dist*.,
   218 F.3d 712 (7th Cir. 2000) ....................................................................................9

*Andrews v. Equitable Life Assurance Soc'y*,
   124 F.2d 788 (7th Cir. 1941) ..................................................................................17

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)..................................................................................................7

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)..................................................................................................7

*Burns v. Dep't of Ins.*,
   2013 IL App (1st) 122449........................................................................................10

*Case Prestressing Corp. v. Chicago College of Osteopathic Med.*,
   455 N.E.2d 811 (Ill. App. Ct. 1983) .......................................................................18

*City of Wood Dale v. Illinois State Labor Relations Bd.*,
   520 N.E.2d 1097 (Ill. App. Ct. 1988) .....................................................................11

*Collins v. Baylor*,
   302 F. Supp. 408 (N.D. Ill. 1969) .............................................................................3

*Cooke v. Jackson Nat'l Life Ins. Co.*,
   2016 WL 1070829 (N.D. Ill. Mar. 15, 2016)...........................................................18

*Dryden v. Sun Life Assur. Co.*,
   737 F. Supp. 1058 (S.D. Ind. 1989), *aff'd*, 909 F.2d 1486 (7th Cir. 1990) ...............3

*Elson v. State Farm Fire & Cas. Co.*,
   691 N.E.2d 807 (Ill. App. Ct. 1998) .......................................................................18

*Ennenga v. Starns*,
   677 F.3d 766 (7th Cir. 2012) ....................................................................................1

*Fiala v. Metropolitan Life Ins. Co.*,
   776 N.Y.S. 2d 29 (2004).................................................................................14, 17

*Fields v. Sax*,
    462 N.E.2d 983 (Ill. App. Ct. 1984) ..................................................................17

*Fifth Third Bancorp v. Dudenhoeffer*,
    573 U.S. 409 (2014)........................................................................................7

*Gilmore v. City of Mattoon*,
    2019 IL App (4th) 180777 ..............................................................................13

*Hanrahan v. Williams*,
    673 N.E.2d 251 (Ill. 1996) ............................................................................11

*Howerton v. Prudential Ins. Co.*,
    2012 IL App (1st) 110154................................................................2, 14, 15

*Lockett v. Chicago Police Bd.*,
    549 N.E.2d 1266 (Ill. 1990) ............................................................................9

*Lubin v. Equitable Life Assurance Soc'y*,
    61 N.E.2d 753 (Ill. App. Ct. 1945) ...............................................................16

*M.Y. Taxicab, Inc. v. Shoenberger*,
    238 F. Supp. 2d 994 (N.D. Ill. 2002) ............................................................15

*Nelson v. Frank E. Best Inc.*,
    768 A.2d 473 (Del. Ch. 2000)..........................................................................8

*Ordower v. Office of Thrift Supervision*,
    999 F.2d 1183 (7th Cir. 1993) .............................................................. *passim*

*Orgone Capital III, LLC v. Daubenspeck*,
    912 F.3d 1039 (7th Cir. 2019) ................................................................1, 7, 8

*Ormond v. Anthem, Inc.*,
    2008 WL 906157 (S.D. Ind. Mar. 31, 2008)............................................9, 15

*Paulsen v. Comm'r*,
    469 U.S. 131 (1985)........................................................................................3

*People ex rel. Hartigan v. E & E Hauling, Inc.*,
    607 N.E.2d 165 (Ill. 1992) ............................................................................19

*Podraza v. Whiting*,
    790 F.3d 828 (8th Cir. 2015) ...........................................................................1

*Shah v. Metropolitan Life Ins. Co.*,
    2003 WL 728869 (N.Y. Sup. Ct. Feb. 21, 2003), *aff'd*, 776 N.Y.S. 2d 29 (2004)..............2, 13

*Shlensky v. Wrigley,*
   237 N.E.2d 776 (Ill. App. Ct. 1968) .........................................................................17

*Sunny Handicraft Ltd. v. Envision This! LLC,*
   2015 WL 231108 (N.D. Ill. Jan. 16, 2015) ................................................................19

*Tierney v. John Hancock Mut. Life Ins. Co.,*
   791 N.E.2d 925 (Mass. App. Ct. 2003) ..................................................................2, 14

*Village of McCook v. Illinois Bell Tel. Co.,*
   780 N.E.2d 335 (Ill. App. Ct. 2002) .........................................................................13

*Weissinger v. Edgar,*
   536 N.E.2d 237 (Ill. App. Ct. 1989) ....................................................................11, 13

*Wright v. Prudential Ins. Co.,*
   285 F. Supp. 2d 515 (D.N.J. 2003) ........................................................................2, 14

**Statutes**

8 Del. Code Ann., Appraisal Right § 262(d)(2) ....................................................................8

215 ILCS 5/42 .....................................................................................................................3

215 ILCS 5/59.1 .......................................................................................................... *passim*

215 ILCS 5/205 ...................................................................................................................3

215 ILCS 5/401 .................................................................................................................10

215 ILCS 5/407 .................................................................................................................10

735 ILCS 5/3-107 .............................................................................................................15

735 ILCS 5/3-110 .............................................................................................................11

<u>**INTRODUCTION**</u>

In 2017, Plaintiff Yitzchok Rokowsky bought a $50,000 insurance policy on the life of his son. He bought the policy from Fidelity Life Association, a subsidiary of a mutual insurance holding company called Members Mutual Holding Company ("Members Mutual"). Two years later, Members Mutual was converted to a publicly traded stock company named Vericity, Inc. ("Vericity") in a process known as "demutualization."

Plaintiff claims that this conversion, which was approved by the Illinois Department of Insurance, violated Illinois law because it limited his right to buy stock in the new company. As a policyholder of Fidelity Life (which, in turn, made him a "member" of Members Mutual), Plaintiff was given the right to buy 124 shares of the new company at $10 per share—a total cost of $1,240. *See* Compl. ¶¶ 1, 14. He claims he should have been given the right to buy up to 743,750 shares of the new company, for a total cost of more than $7.4 million, before shares were offered to anyone other than him and other policyholders. *See id.* ¶¶ 94-97, 114-16, 124-26.

Plaintiff's entire lawsuit rests on a fundamental misunderstanding of the rights of members of mutual insurance companies in Illinois. The lawsuit is fundamentally flawed for a second reason as well: It was filed after the expiration of the statute of limitations. "Any action challenging the validity of or arising out of acts taken or proposed to be taken under" the demutualization statute must be brought within 30 days of the effective date of the plan—here, August 6, 2019. 215 ILCS 5/59.1(15); Ex. A (Vericity Form 8-K filed August 9, 2019 ("8-K")).[1]

---

[1] The Court may take judicial notice of facts that are not subject to reasonable dispute and are either generally known within the jurisdiction or readily determined through unimpeachable sources. *Ennenga v. Starns*, 677 F.3d 766, 773-74 (7th Cir. 2012). This includes disclosure documents filed with the SEC. *Podraza v. Whiting*, 790 F.3d 828, 837 (8th Cir. 2015). The Court may also consider documents referenced in the complaint, such as Vericity's Form 8-K, *see* Compl. ¶¶ 61, 63, 81, and its Prospectus, *see id.* ¶¶ 8, 15, 31, 43, 47, 51-59, 64-65, 70-72, 83, 85, 99. *Orgone Capital III, LLC v. Daubenspeck*, 912 F.3d 1039, 1044 (7th Cir. 2019).

Because Plaintiff did not file suit until January 21, 2020—more than four months after the statute of limitations expired—his claims are untimely and should be dismissed with prejudice.

The claims suffer from other incurable problems too. For one thing, they amount to a collateral attack on the Illinois Department of Insurance's approval of the plan of demutualization. This Court should follow the lead of other courts facing the same sort of attack and defer to the findings of the agency tasked with implementing demutualizations in this State.[2] This precedent requires dismissal of not just Plaintiff's claim under the Illinois statute governing demutualizations, but also his common law claims, all of which seek to second-guess the Illinois regulator's decision.

The issues described above foreclose all of Plaintiff's claims, but each individual claim is defective for the additional reasons discussed in Section IV below. These reasons range from the assertion of a breach of contract claim without citing the breach of any particular provision to the assertion of fiduciary duty claims in the absence of a fiduciary duty. Plaintiff has also improperly sued Defendants who cannot have owed him any duty because they were not members of the relevant corporate family at the relevant time. The claims against these Defendants—Apex Holdco L.P., which became the majority shareholder in the new company after the demutualization, plus four individuals who did not join the Board of Directors of the new company, Vericity, until after the transaction—are both factually and legally implausible.

---

[2] *See Shah v. Metropolitan Life Ins. Co.*, 2003 WL 728869 (N.Y. Sup. Ct. Feb. 21, 2003), *aff'd*, 776 N.Y.S. 2d 29, 31-32 (2004); *Wright v. Prudential Ins. Co.*, 285 F. Supp. 2d 515, 520 (D.N.J. 2003); *Tierney v. John Hancock Mut. Life Ins. Co.*, 791 N.E.2d 925, 938 (Mass. App. Ct. 2003); *Howerton v. Prudential Ins. Co.*, 2012 IL App (1st) 110154, ¶ 30.

## FACTUAL BACKGROUND

Mutual companies are an organizational form the Seventh Circuit has called "an odd duck." *Ordower v. Office of Thrift Supervision*, 999 F.2d 1183, 1185 (7th Cir. 1993). Policyholders in mutual insurance companies automatically become "members," and as such they enjoy certain rights tied to their policies. Compl. ¶ 1. The Complaint presupposes that membership in a mutual company is equivalent to the ownership of stock, *see*, *e.g.*, *id.* ¶ 74, but the two are very different. The rights of mutual company members are generally limited to the right to vote on director nominations and major corporate events, as well as the right in the event of a wind-down to share in the proceeds if the company has more assets than liabilities. 215 ILCS 5/42(1); 215 ILCS 5/205(1)(i).

Unlike stockholders in a stock corporation, mutual company members have no right to share in the ongoing profits of a company, nor are they the owners of a company's residual value in any practical sense. "It is not the expectation of anyone buying these kinds of policies that they are going to be sharing in the profits of a company." *Collins v. Baylor*, 302 F. Supp. 408, 411 (N.D. Ill. 1969). *See also Paulsen v. Comm'r*, 469 U.S. 131, 139 (1985) (holding in the mutual bank context that "[i]t stretches the imagination very far to attribute any real value" to members' residual ownership interest); *Dryden v. Sun Life Assur. Co.*, 737 F. Supp. 1058, 1063 (S.D. Ind. 1989) (members "did not bear the risk" of mutual insurance company's investments "or reasonably expect to share in" its profits), *aff'd*, 909 F.2d 1486 (7th Cir. 1990).

One drawback to the mutual form is that it makes it more difficult for companies to raise capital to grow their business. In response to this challenge, Fidelity Life Association, the company that later issued Plaintiff's life insurance policy, converted from a mutual company to a stock company in 2007 and, at the same time, formed a mutual insurance holding company, Members Mutual, which became the ultimate controlling parent of Fidelity Life. *See* Compl.

¶¶ 16, 36; Ex. B (Prospectus filed June 20, 2019 ("Prospectus")) at 5. Roughly a decade later, on July 31, 2018, the Board of Directors of Members Mutual adopted a plan to convert that mutual holding company to a publicly traded stock company through a process known as demutualization. Ex. B (Prospectus) at 95. It is this latter transaction that Plaintiff challenges here.

Under Illinois law, insurers going through a demutualization offer members "subscription rights"—the right to buy shares in the stock company formed in connection with the demutualization. *See* 215 ILCS 5/59.1(6)(c). This is different from the statutes in some other states, including those governing the demutualizations of other companies Plaintiff references in his Complaint, *e.g.*, Compl. ¶ 75. These other states' statutes require insurers to distribute shares of stock when they demutualize, but no such rights are granted under the Illinois statute. Instead, Illinois requires distribution of subscription rights—nothing more. *See* 215 ICLS 5/59.1(6)(c), (f).

The demutualization at issue in this case provided universal subscription rights: All of the stock in the new company would first be offered to members at $10 per share before a single share was offered to anyone else. *See* Compl. ¶¶ 42, 44; Ex. B (Prospectus) at 96; Ex. C (Second Amended and Restated Members Mutual Holding Company Plan of Conversion From Mutual Holding Company to Stock Form ("Plan")) at B-2 ("First priority subscription rights are granted to Eligible Members to purchase all of the shares offered in the Subscription Offering."); Ex. A (8-K). The amount of stock any individual member could buy was based on an actuarial allocation that reflected each member's historical and expected future contribution to "surplus"—the excess of premiums over the company's expenses. *See* Compl. ¶¶ 65, 67; Ex. B (Prospectus) at 107; 215 ILCS 5/59.1(6)(c)(ii) (defining surplus). All members could buy at least

100 shares, and depending on their level of expected lifetime contribution to the company's surplus, many had the right to buy far more. Compl. ¶ 67; Ex. B (Prospectus) at 107. Plaintiff bought his policy only two years before the demutualization and selected a very modest coverage, so he had an expected lifetime contribution to the company's surplus that was negligible, resulting in a rights allocation to buy up to 124 shares. Compl. ¶ 14.

If all 200,000-plus members of Members Mutual had exercised their full subscription rights, they would have subscribed to all available shares and then some. *See* Ex. B (Prospectus) at 96. If such an "oversubscription" had occurred, the number of shares each member would have been allowed to purchase would have been reduced on a pro rata basis. *Id.* It turned out, however, that members chose to buy fewer than all available shares. As a result, the company's directors, officers, and employees were permitted to (and did) buy stock, and Apex Holdco L.P., an entity that was contractually obligated to buy certain amounts of stock to the extent it was not otherwise purchased, bought the rest to ensure closing of the transaction for all shareholders. *See* Compl. ¶¶ 49, 51, 56, 61; Ex. A (8-K). As Members Mutual informed its members before they voted on the transaction, Apex Holdco's role as the stand-by purchaser meant it might acquire a controlling stake in the company after the conversion. Compl. ¶ 8; Ex. B (Prospectus) at 27.

The demutualization plan was subject to the approval of the Director of the Illinois Department of Insurance. By law, the Director cannot approve a demutualization plan without finding that (a) it complies with the Illinois demutualization statute, (b) it "will not prejudice the interests of the members," and (c) "the plan's method of allocating subscription rights is fair and equitable." 215 ILCS 5/59.1(3)(a). The Director approved the plan on June 4, 2019. Ex. B (Prospectus) at 95.

In addition to needing regulatory approval, the plan could not proceed unless it was approved by at least two-thirds of the members who voted on it. 215 ILCS 5/59.1(4)(c)(1). That approval was secured on August 6, 2019. *See* Ex. A (8-K).

With the necessary approvals in hand, the transaction proceeded. A new publicly traded stock company—Vericity—began trading on the NASDAQ. Former members of Members Mutual, including Plaintiff, along with the company's officers, directors, and employees, collectively owned 23.5 percent of the company, while the stand-by purchaser, Apex Holdco, purchased a majority—76.5 percent. Ex. A (8-K); Compl. ¶ 61. Plaintiff incorrectly refers to the number of shares purchased by members, officers, directors, and employees—3,501,648 shares (*see* Ex. A (8-K))—as the result of a "cap" on members' rights to purchase shares. Compl. ¶¶ 6, 61. As explained above, however, far from being "capped," members had first priority to purchase shares and, if more of them had chosen to invest, they could have collectively bought the entire company. *See supra* at 4-5. The number of shares Plaintiff references—3,501,648 shares, or 23.5 percent of the company—is the amount that members, along with officers, directors, and employees (who were offered rights to purchase after the members) *chose* to purchase.

## PLAINTIFF'S COMPLAINT

"Under protest," Plaintiff purchased all 124 shares in Vericity he was entitled to buy. Compl. ¶ 14. He contends he should have been allowed to buy much more—up to 5 percent of the company, or 743,750 shares, for a total purchase price of $7,437,500. Plaintiff makes this claim because the Illinois demutualization statute sets a 5 percent cap on the amount of stock any individual can own in the company formed in the demutualization process. In other words, Plaintiff contends the statutory ceiling is also his personal floor—that he should have been allowed to buy "at a minimum, the statutory maximum." *Id.* ¶ 124.

In Count I, Plaintiff claims that all Defendants violated the demutualization statute, 215 ILCS 5/59.1. His other claims are for breach of fiduciary duty against Vericity, Members Mutual, Fidelity Life, and the individual defendants (Count II); negligence against the same Defendants (Count III); breach of contract against Vericity, Members Mutual, and Fidelity Life (Count IV); and unjust enrichment against all Defendants (Count V). All of the common law claims arise out of the supposed unfairness of limiting Plaintiff's subscription rights. *See* Compl. ¶¶ 107, 114-16, 124-26, 129-30.

## ARGUMENT

### I.     Standard of review.

As the Supreme Court has observed, Rule 12(b)(6) is an "important mechanism for weeding out meritless claims." *Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 425 (2014). A complaint must contain "enough facts to state a claim to relief that is plausible on its face," and these facts must "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547, 555 (2007). Plaintiffs may not rely on "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Allegations that are "merely consistent" with unlawful conduct, but are also consistent with lawful conduct, are insufficient. *Id.*

"Where a plaintiff alleges facts sufficient to establish a statute of limitations defense, the district court may dismiss the complaint on that ground." *Orgone Capital III, LLC v. Daubenspeck*, 912 F.3d 1039, 1043-44 (7th Cir. 2019). In conducting this analysis, the court "may also take judicial notice of matters of public record and consider documents incorporated by reference in the pleadings." *Id.* at 1044.

## II.     The Complaint is untimely under the 30-day statute of limitations of the Illinois demutualization statute.

The Complaint fails to state a claim for a variety of reasons, but the simplest basis for dismissal is that it was filed too late. All claims in the Complaint arise out of the Members Mutual demutualization plan. *See* Compl. ¶ 3 (alleging that plan was "structured so as to improperly constrain Plaintiff" and "structured and executed in such a fashion that it breached Vericity's and its directors' basic fiduciary duties"); *see also id.* ¶¶ 98, 107-09, 114, 124, 129-30. The Illinois demutualization statute is clear: "Any action challenging the validity of or arising out of acts taken or proposed to be taken under this Section [the demutualization statute] shall be commenced within 30 days after the effective date of the plan." 215 ILCS 5/59.1(15). The effective date of the plan occurred when the Department of Insurance and the members had approved it and the revised articles of incorporation had been adopted, *id.* § 59.1(9); here, that was August 6, 2019. *See* Ex. A (8-K).

Despite the clear statutory deadline, Plaintiff did not sue within 30 days of the effective date. Instead, he waited more than five months, until January 21, 2020. His claims should therefore be dismissed with prejudice as untimely. *See Orgone Capital*, 912 F.3d at 1043-44.

The 30-day statute of limitations is designed to require that any claim challenging the structure of a demutualization will be filed promptly. Similar limitations periods are common for challenges to proposed corporate transactions, where quick action may be required to stop a transaction before it cannot be undone. For instance, when shareholders in Delaware corporations challenge the compensation offered in a change-of-control transaction, they have just 20 days after receiving notice to seek an appraisal. *See* 8 Del. Code Ann., Appraisal Right § 262(d)(2); *Nelson v. Frank E. Best Inc.*, 768 A.2d 473, 479–80 (Del. Ch. 2000) ("a late filing will not be judicially condoned").

Short limitations periods are also common for challenges to administrative rulings like the Department of Insurance's approval of the demutualization plan at issue here. These challenges are subject to limitations periods that are measured in weeks rather than months or years. *American Nat'l Bank & Tr. Co. v. City of Chicago*, 478 N.E.2d 1, 2-3 (Ill. App. Ct. 1985) (dismissing quiet title action because plaintiff did not make good faith effort to serve all parties within 35-day statutory period); *Lockett v. Chicago Police Bd.*, 549 N.E.2d 1266, 1268 (Ill. 1990) (35-day statute of limitations generally applies to "'hasten the procedure' of administrative review and avoid undue delay"), *overruled on other grounds by Nudell v. Forest Pres. Dist. of Cook Cty.*, 799 N.E.2d 260 (Ill. 2003); *Amundsen v. Chicago Park Dist*., 218 F.3d 712, 719 (7th Cir. 2000) (citing *Lockett* and noting that the statute of limitations is jurisdictional).

Here, Plaintiff is seeking to disturb the finality of a transaction that was approved by the Department of Insurance and Plaintiff's fellow policyholders. Ex. B (Prospectus) at 95; Compl. ¶¶ 60-61. Moreover, Vericity has been a public company for almost ten months, and the ownership interests initially distributed in the member offering have shifted during that time, *see* Ex. A (8-K); it is now an egg that cannot be unscrambled. Plaintiff and all other members had ample advance notice of the transaction, yet none of them, including Plaintiff, filed a timely complaint. For this reason alone, the Complaint should be dismissed with prejudice.[3]

---

[3] *Ormond v. Anthem, Inc.*, 2008 WL 906157, at *20-21 (S.D. Ind. Mar. 31, 2008), is not to the contrary. The court in *Ormond* allowed plaintiffs to pursue common law claims notwithstanding a 30-day deadline in Indiana's demutualization statute because "the plaintiffs could not possibly have known until more than thirty days after the Commissioner's order that they had been injured by the defendants' actions, which is an essential element of all of their claims." *Id.* at *20. Here, in contrast, Plaintiff was aware of his supposed "injury"—the limitation on his right to buy stock in the new company—even before the plan of demutualization was approved. *See* Compl. ¶ 14 (acknowledging that Plaintiff received notice of the limitation in July 2019).

**III.    The Complaint challenges an Illinois Department of Insurance decision without following the Illinois Administrative Review Law.**

**A.    Plaintiff has not plausibly alleged that the Department's decision was arbitrary and capricious or against the manifest weight of the evidence.**

The Complaint is written as if this Court should decide on a blank slate whether the plan of demutualization was fundamentally fair to Plaintiff. *See* Compl. ¶¶ 3, 98, 107-09, 114, 124, 129-30. That is not the Court's role. Members Mutual's detailed plan of demutualization received the approval of the agency statutorily charged with overseeing such plans: the Illinois Department of Insurance. The Department specifically determined that the plan complied with the statute and was fair and equitable to the company's members—the same questions Plaintiff has asked the Court to revisit. *See* 215 ILCS 5/59.1(3)(a) (requiring Director of Department of Insurance to find that a demutualization plan complies with the statute, that it "will not prejudice the interests of the members," and that "the plan's method of allocating subscription rights is fair and equitable").

Because Plaintiff seeks to overturn a decision of an Illinois agency, he must abide by the Illinois Administrative Review Law. *See* 215 ILCS 5/407 (with exception not relevant here, "the provisions of the Administrative Review Law, and all amendments and modifications thereof, and the rules adopted pursuant thereto, shall apply to and govern all proceedings for the judicial review of final administrative decisions of the Department [of Insurance]"); *Burns v. Dep't of Ins.*, 2013 IL App (1st) 122449, ¶ 11 (dismissing complaint seeking judicial review of insurance department decision where plaintiff did not adhere to the Administrative Review Law). And because the Administrative Review Law applies to final decisions of the Department of Insurance, 215 ILCS 5/401, it is the exclusive method for challenging the agency's approval of the Plan. "Once the legislature expressly adopts the Act as the mode of review for a given agency, Illinois courts have consistently held that the remedy under the Act is exclusive and the

alternate methods of direct review or collateral attack are not permitted." *Weissinger v. Edgar*, 536 N.E.2d 237, 240 (Ill. App. Ct. 1989); *accord City of Wood Dale v. Illinois State Labor Relations Bd.*, 520 N.E.2d 1097, 1102 (Ill. App. Ct. 1988).

Under the Administrative Review Law, any reviewing court must take the agency's findings and conclusions as prima facie true. 735 ILCS 5/3-110. The Court may not disturb the agency's decision unless it was "arbitrary and capricious" or "against the manifest weight of the evidence." *Hanrahan v. Williams*, 673 N.E.2d 251, 254 (Ill. 1996). Here, Plaintiff has not even alleged that the Director's decision was arbitrary and capricious or against the manifest weight of the evidence, much less alleged facts making such a conclusion plausible. Because the entire Complaint constitutes a collateral attack on the Department's decision, his failure to make those allegations means his Complaint should be dismissed.

None of the allegations in the Complaint plausibly suggest that the Department of Insurance acted arbitrarily and capriciously. Plaintiff alleges that Defendants violated the demutualization statute by denying members "the ability to acquire more shares of Vericity's stock," Compl. ¶ 102, divining this right from the statute's general prohibition of "any one person or group of persons acting in concert" from acquiring more than 5 percent of the stock of the new company. 215 ILCS 5/59.1(6)(i); *see also* Compl. ¶¶ 96-97.[4] Plaintiff argues that Defendants violated the statute by denying him the right to buy up to the statutory cap, Compl. ¶ 124, but nothing in the statute confers such a right. Again, Plaintiff is construing a ceiling as a floor. *See id.* (alleging that certain Defendants "were contractually required to provide each member subscription rights up to, at a minimum, the statutory maximum").

---

[4] There are exceptions to this provision, including for offerings made in the event of an undersubscription, as was the case for Apex Holdco. 215 ILCS 5/59.1(6)(i).

As the Seventh Circuit has observed, while there may be several valid ways to carry out a demutualization, Plaintiff's proposed approach is not among them. *Ordower*, 999 F.2d at 1185. That is because, as the Seventh Circuit explained, there is no reason to prefer wealthier members who want to buy more stock over members who are "financially unable or unwilling to make an additional investment." *Id.* Nor are members like Plaintiff, whose estimated lifetime contribution to company surplus is negligible but who apparently could invest millions, entitled to make such a large investment; wealthy members "may have no entitlement to that bonanza," the Seventh Circuit said. *Id.* On the contrary, the demutualization statute expressly authorizes the allocation of subscription rights according to each member's contribution to surplus, *see* 215 ILCS 5/59.1(6)(c)(ii)—the approach taken by Members Mutual.

Rather than giving wealthy members an outsize right to purchase shares, Members Mutual's plan allocated the right to purchase shares in the converted company to *all* members who wished to purchase them, using an actuarial process that took into account each member's expected lifetime contribution to surplus. *See supra* at 4. Again, this method was not only approved by the Department of Insurance, it was expressly contemplated by the demutualization statute. *See id.*; 215 ILCS 5/59.1(3)(a), (6)(c)(ii).

Plaintiff complains that the stand-by purchaser, Apex Holdco, purchased a majority stake in Vericity after the members collectively declined to buy all of the shares they could have bought. Compl. ¶¶ 97-99. But this too is explicitly contemplated by the statute, *see* 215 ICLS 5/59.1(6)(c), and this too was approved by the Department of Insurance. *See supra* at 5. Plaintiff offers no rationale for why it was arbitrary and capricious for the Department to provide this approval.

**B. Plaintiff cannot evade the requirements of the Administrative Review Law by recasting his attack on the agency's decision as common law claims.**

Where a plaintiff cannot bring a direct action under a statute, pleading statutory claims as common law claims is impermissible "artful pleading." *See Village of McCook v. Illinois Bell Tel. Co.*, 780 N.E.2d 335, 341 (Ill. App. Ct. 2002) (breach of contract and fiduciary duty claims "premised solely upon alleged statutory violations" were mere "[a]rtful pleading" and an "impermissible attempt" to enforce the statute); *Gilmore v. City of Mattoon*, 2019 IL App (4th) 180777, ¶ 31 (upholding dismissal of unjust enrichment claim as "derivative" of "foundational claim" of violation of the Insurance Code); *Weissinger*, 536 N.E.2d at 240 (if Administrative Review Law applies, the remedy under that law is "exclusive" and "alternate methods of direct review or collateral attack are not permitted").

Each of Plaintiff's common law claims alleges that the allocation of subscription rights was unfair and inequitable. This amounts to an allegation that Defendants violated the demutualization statute, *see* 215 ILCS 5/59.1(6)(c)(ii) ("subscription rights shall be allocated in whole shares among the eligible members using a fair and equitable formula"), and that the Department of Insurance acted unlawfully in approving the plan, *id.* § 59.1(3)(a)(iii). For example, the gist of the fiduciary duty claim is that certain Defendants provided members "an unfairly low number of subscription rights," Compl. ¶ 107, while the gist of the negligence claim is that certain Defendants were "negligent" in "improperly limiting" Plaintiff and other members "from purchasing additional shares of Vericity," *id.* ¶ 114; *see also id.* ¶¶ 124-26 (breach of contract), 129-30 (unjust enrichment).

Plaintiff's effort to rebrand his statutory claim as common law claims has been universally rejected in the demutualization context, with courts construing the tactic as an impermissible collateral attack on the agency's decision. For instance, in *Shah v. Metropolitan*

*Life Insurance Co.*, 2003 WL 728869 (N.Y. Sup. Ct. Feb. 21, 2003), the plaintiffs sued for breach of fiduciary duty, breach of contract, and other theories alleging that an insurance company's demutualization did not give members fair value. *Id.* at *6-8. The court dismissed claims arising out of the demutualization statute, holding that they could be brought only in an action challenging the approval of the Superintendent of Insurance. *Id.* at *11-13. The court also dismissed the common law claims as an impermissible "collateral attack" on the Superintendent's approval: "In approving the Plan, the Superintendent necessarily determined that the valuation and the determination of the IPO price, complied with the requirements of the statute and were fair and equitable." *Id.* at *13-14. The Appellate Division followed that reasoning and affirmed. *Fiala v. Metropolitan Life Ins. Co.*, 776 N.Y.S. 2d 29, 31-32 (2004).[5]

Other courts have come to similar conclusions. *See Wright v. Prudential Ins. Co.*, 285 F. Supp. 2d 515, 520 (D.N.J. 2003) ("though on its face Plaintiffs' claim is for breach of contract, in its substance it is actually a challenge to the Commissioner's approval of the Plan"); *Tierney v. John Hancock Mut. Life Ins. Co.*, 791 N.E.2d 925, 938 (Mass. 2003) (agreeing with trial court that common law claims "are really nothing more than indirect challenges" to agency's decision); *Howerton v. Prudential Ins. Co.*, 2012 IL App (1st) 110154, ¶ 30 (upholding dismissal under New Jersey law, including breach of fiduciary duty claims; claims were "a challenge to the Commissioner's approval of the demutualization plan"); *see also Ordower*, 999 F.2d at 1188 (addressing federal demutualization statutory scheme for savings and loan entities and observing, "Repackaging the challenge as one under federal common law for breach of fiduciary duty adds

---

[5] The Appellate Division allowed plaintiffs to proceed with fraud claims that were not based on an attack on the agency's approval. *Fiala*, 776 N.Y.S at 32; *see also Ordower*, 999 F.2d at 1188 (instructing district court to consider claims about the accuracy of proxy materials, while dismissing other claims). No such claims have been alleged here.

nothing. Whatever duties bank managers have are enforced by the [Office of Thrift Supervision] subject to review in the court of appeals.").[6] This Court should follow these cases and dismiss the Complaint.

### C. Plaintiff has failed to follow the mandatory procedural requirements of the Illinois Administrative Review Law.

As an additional and independent reason for dismissal, Plaintiff has failed to follow the procedures of the Administrative Review Law by failing to name the Department of Insurance as a Defendant. 735 ILCS 5/3-107(a) (with limited exceptions not relevant here, "in any action to review any final decision of an administrative agency, the administrative agency and all persons, other than the plaintiff, who were parties of record to the proceedings before the administrative agency shall be made defendants"). This requirement is strictly construed. *M.Y. Taxicab, Inc. v. Shoenberger*, 238 F. Supp. 2d 994, 996 (N.D. Ill. 2002); *see also Howerton*, 979 N.E.2d at 952 ("When an indispensable party is absent, the court should not proceed to a decision on the merits."). The Complaint should be dismissed for this reason as well.

---

[6] Once again, *Ormond* is not to the contrary. That court dismissed claims under the Indiana demutualization statute but allowed other claims to proceed because the company had changed the terms of its initial public offering *after* the plan was approved—just days before the members voted on it. 2008 WL 906157, at *23 (distinguishing other cases because defendants allegedly breached their duties "both before *and after* the Commissioner had approved the demutualization"). Plaintiff's claims here, in contrast, arise out of the terms of the plan.

**IV.     Plaintiff's claims should also be dismissed for multiple claim-specific reasons.**

In addition to being untimely and improper attacks on an administrative ruling, Plaintiff's common law claims should be dismissed for the additional, independent reasons discussed below.

   **A.     Plaintiff's breach of fiduciary duty claim should be dismissed because the Board did not have a fiduciary duty to members—and both the fiduciary duty and negligence claims should be dismissed under the business judgment rule.**

After the company was converted to a mutual holding company in 2007, the Members Mutual Board of Directors explored how to gain increased access to capital and consulted with independent advisors about that goal. The Board ultimately approved the plan of conversion more than a decade later. Ex. B (Prospectus) at 94-95. Plaintiff claims that was a breach of fiduciary duty for the same reasons the conversion allegedly violated the demutualization statute. *See* Compl. ¶¶ 107-08.

In addition to failing for the reasons discussed above, Plaintiff has failed to identify any relevant fiduciary duty these Defendants may have owed him. As Plaintiff has acknowledged, "The relationship between a member of a mutual insurance company and the mutual insurance company itself is contractual in nature as the result of an express or implied contract between them." Compl. ¶ 119; *accord Lubin v. Equitable Life Assurance Soc'y*, 61 N.E.2d 753, 756 (Ill. App. Ct. 1945) ("[T]he rights and interests of policyholders in the assets of a mutual life insurance company are contractual in nature and are measured by their policies and by the statutes, charter and by-laws, if any, which comprise the terms of their contracts.").

As a corollary to the fundamentally contractual relationship between policyholders and insurance companies, courts have declined to find an independent fiduciary duty owed to members separate from that contractual duty. "Whatever rights a member of a mutual company

has are delineated by the terms of the contract, and come from it alone." *Andrews v. Equitable Life Assurance Soc'y*, 124 F.2d 788, 789 (7th Cir. 1941). Other courts have applied this rule in the demutualization context. In *Fiala*, for instance, the court affirmed the dismissal of fiduciary duty claims in part because "an insurance company does not owe its policyholder a common-law fiduciary duty except when it is called upon to defend its insured." 776 N.Y.S.2d at 32.

Courts also refuse to disturb the properly informed business judgment of a Board, or to replace the Board's business judgment with the judgment of the court, regardless of the nature of the claim. *Shlensky v. Wrigley*, 237 N.E.2d 776, 779 (Ill. App. Ct. 1968) ("The judgment of the directors of corporations enjoys the benefit of a presumption that it was formed in good faith and was designed to promote the best interests of the corporation they serve."). "A corporate director will not be held liable for honest errors or mistakes of judgment as long as the decision does not involve fraud, illegality or conflict of interest." *Fields v. Sax*, 462 N.E.2d 983, 986 (Ill. App. Ct. 1984). Plaintiff alleges nothing of the sort here. Nor can he. Plaintiff suggests that the Members Mutual Board was somehow conflicted because directors, officers, and employees had a second- or third-priority right to purchase shares in the demutualization if members chose not to purchase all of the shares allocated to them. *See, e.g.*, Compl. ¶¶ 3, 6, 10, 56-57, 61. But the allocation to directors, officers, and employees alleged here, 14 percent of the offering minimum, *id.* ¶ 56, is far less than the 25 percent permitted under the Illinois statute, 215 ILCS 5/59.1(7)(a)(ii). And there is no "conflict" in aligning the interests of officers, directors, and employees with those of the company. When a former thrift bank member took issue with a 13.5% allocation to officers, directors, and employees in a demutualization transaction, the Seventh Circuit called the argument "absurd." *Ordower*, 999 F.2d at 1186. The court explained: "Aligning the interests of managers and investors is a much-sought goal of corporate organization. Long ago courts

concluded that options to purchase stock at a bargain price do not waste a firm's assets. [The Office of Thrift Supervision's] approval of a conversion plan that included stock options is no more objectionable." *Id.* Whether cast as a claim for breach of fiduciary claim or for negligence, Plaintiff's claims are not viable.

B. **Plaintiff's breach of contract claim should be dismissed because Plaintiff has not pointed to any breach.**

Plaintiff's breach of contract claim, like his other claims, mirrors his statutory claims. Compl. ¶¶ 120-22. But Plaintiff does not allege that Defendants breached any particular provision of his policy or any other contract; instead, he gestures vaguely to "(i) the contractual relationship between member and mutual insurance company, (ii) well-established business practices, (iii) prior course of dealings between members and mutual insurance company and (iv) the settled expectations of the parties," and argues that the statutory framework has been "incorporated into the terms of the express or implied contract between member and the mutual insurance company, regardless of whether it is specifically stated as such therein." *Id.* ¶ 122.

This does not state a contract claim under Illinois or New Jersey law, the two possible candidates for which state law applies. (Because the outcome would be the same under the laws of the two states, this Court need not, at this point, engage in a conflict of law analysis. *Cooke v. Jackson Nat'l Life Ins. Co.*, 2016 WL 1070829, at *3 (N.D. Ill. Mar. 15, 2016).) "[I]n alleging a breach of contract, a plaintiff's pleadings must allege facts sufficient to indicate the terms of the contract claimed to have been breached." *Elson v. State Farm Fire & Cas. Co.*, 691 N.E.2d 807, 812 (Ill. App. Ct. 1998); *accord Case Prestressing Corp. v. Chicago College of Osteopathic Med.*, 455 N.E.2d 811, 817 (Ill. App. Ct. 1983). The breach of contract claim should be dismissed for this independent reason as well.

**C.** **Plaintiff's unjust enrichment claim should be dismissed because the parties' relationship is governed by contract.**

Plaintiff's claims for unjust enrichment are also virtually identical to his other claims, except that Plaintiff contends for the first time that Defendants were motivated by the desire to reduce "shareholder servicing costs," apparently by reducing the number of shareholders. Compl. ¶ 129. This allegation does not square with the remainder of the Complaint, which argues not that *more* members should have been offered subscription rights (nor could it, since *all* eligible members were offered the right to participate in the offering), but instead that individual members like Plaintiff should have been given the right to buy many more shares.

Beyond that logical disconnect, the unjust enrichment claim suffers from other infirmities. First, unjust enrichment is a quasi-contractual claim that is not available when the relevant relationship is governed by a written contract. *People ex rel. Hartigan v. E & E Hauling, Inc.*, 607 N.E.2d 165, 177 (Ill. 1992). It therefore has no place in allegations against the Vericity Defendants (Vericity, Members Mutual, and Fidelity Life (Compl. ¶ 18)), whose relationship with Plaintiff is allegedly governed by contract. *Id.* ¶¶ 118-27.

Plaintiff also alleges that Apex Holdco, the stand-by purchaser that became a majority shareholder in Vericity at the end of the transaction, has somehow been unjustly enriched. But a Plaintiff may not recover for unjust enrichment against a third party where, as here, there is no reasonable expectation of quasi-contractual payment from that party. *Sunny Handicraft Ltd. v. Envision This! LLC*, 2015 WL 231108, at *4 (N.D. Ill. Jan. 16, 2015); *AMGRO, Inc. v. Lincoln Gen. Ins. Co.*, 2008 WL 11409046, at *10 (D.N.J. Mar. 17, 2008), *aff'd*, 361 F. App'x 338 (3d Cir. 2010).

D. **The claims against the Defendants who could not have owed any duty to Plaintiff should be dismissed as legally and factually implausible.**

Finally, several claims name Defendants who could not have owed Plaintiff any legal or other duty. Defendants Rahe, Dong, Perry, and Ashe did not even join the board of the demutualized company until after the conversion. Compl. ¶¶ 20-22, 29; Ex. B (Prospectus) at 120-22. These individuals were named in the breach of fiduciary duty claim but never served on the Members Mutual Board of Directors, the entity that, together with the Illinois Department of Insurance and a super-majority of voting members, approved the transaction. They joined the Board of Directors of the new company, Vericity, *after* the demutualization. The same Defendants were also named in the unjust enrichment claim (Compl. at 34), but Plaintiff does not suggest how or why any individual defendant might be liable under that claim. *See id.* ¶¶ 12-31 (discussing alleged unjust enrichment on the part of only the entity Defendants).

For similar reasons, all claims against the stand-by purchaser, Apex Holdco, should be dismissed. Apex Holdco owed no legal duty to Plaintiff. It served as the stand-by purchaser and purchased shares pursuant to a plan approved by the Illinois Department of Insurance, the Board of Directors of Members Mutual, and a super-majority of Plaintiff's fellow voting members. For this additional reason, Plaintiff has no viable claim against Apex Holdco.

<u>CONCLUSION</u>

All of Plaintiff's claims are time-barred, and all are deficient on the merits. This Court should dismiss the Complaint with prejudice, award Defendants their costs, and award Defendants any other appropriate relief.

Respectfully submitted,

VERICITY INC., MEMBERS MUTUAL, FIDELITY LIFE ASSOCIATION, APEX HOLDCO L.P., ERIC RAHE, CALVIN DONG, SCOTT PERRY, RICHARD HEMMINGS,

JAMES E. HOHMANN, JAMES SCHACHT,
LINDA WALKER BYNOE, STEVEN GROOT,
JOHN FIBIGER, and NEIL ASHE

By: */s/ Eric S. Mattson*
One of their attorneys

Walter C. Carlson
Eric S. Mattson
Elizabeth Y. Austin
Sidley Austin LLP
One South Dearborn St.
Chicago, Illinois 60603
Phone: (312) 853-7000
*wcarlson@sidley.com*
*emattson@sidley.com*
*laustin@sidley.com*

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on June 3, 2020, I caused a copy of the foregoing Defendants'

Memorandum of Law in Support of Motion to Dismiss to be filed via the electronic filing system

for the U.S. District Court for the Northern District of Illinois, which will send a Notice of

Electronic Filing to all attorneys of record.

<u>*/s/ Elizabeth Y. Austin*</u>