**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| YITZCHOK ROKOWSKY, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>VERICITY INC., MEMBERS MUTUAL, FIDELITY LIFE ASSOCIATION, APEX HOLDCO L.P., ERIC RAHE, CALVIN DONG, SCOTT PERRY, RICHARD HEMMINGS, JAMES E. HOHMANN, JAMES SCHACHT, LINDA WALKER BYNOE, STEVEN GROOT, JOHN FIBIGER, and NEIL ASHE,<br><br>Defendants. | Civil Action No. 1:20-cv-456<br><br>Hon. Andrea R. Wood |

**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES……………………………………………………………………..ii

INTRODUCTION .......................................................................................................................... 1

ARGUMENT .................................................................................................................................. 3

    I.    Plaintiff's belated attempts to restyle his Complaint are unavailing because his only alleged injury is the share allocation under the demutualization plan. ............................... 3

    II.   Plaintiff's Complaint arises out of acts taken under the demutualization statute; as a result, it is barred by the 30-day statute of limitations. ....................................................... 6

    III.  The Complaint challenges conduct approved by the Illinois Department of Insurance, so it should be dismissed as an improper challenge under the Illinois Administrative Review Law. ........................................................................................................................ 8

    IV.  Plaintiff's fiduciary duty claims should also be dismissed because mutual company directors do not owe a fiduciary duty to members under Illinois law and the claims are barred by the business judgment rule. ............................................................................ 10

        A.   Illinois law provides that directors of Illinois mutual insurance companies do not owe a fiduciary duty to members. ................................................................................. 10

        B.   The business judgment rule prohibits second-guessing of the business judgment exercised by Members Mutual directors and approved by its members. ..................... 12

    V.   Plaintiff's remaining claims should also be dismissed for the additional reasons set out in the Defendants' opening brief. ........................................................................... 14

CONCLUSION ............................................................................................................................. 14

# **TABLE OF AUTHORITIES**

**Cases**                     **Page(s)**

*Andrews v. Equitable Life Assurance Soc'y*,
  124 F.2d 788 (7th Cir. 1941) ..................................................................................................11

*Babbitt Municipalities, Inc. v. Health Care Serv. Corp.*,
  2016 IL App (1st) 152662.......................................................................................................13

*Beraha v. Baxter Health Care Corp.*,
  956 F.2d 1436 (7th Cir. 1992) ................................................................................................14

*Brucker v. Mercola*,
  886 N.E.2d 306 (Ill. 2007) ........................................................................................................7

*Carver v. Nall*,
  701 N.E.2d 1180 (Ill. App. Ct. 1998), *aff'd*, 714 N.E.2d 486 (Ill. 1999) .................................8

*CDX Liquidating Tr. v. Venrock Assocs.*,
  640 F.3d 209 (7th Cir. 2011) ..................................................................................................12

*Collins v. Baylor*,
  302 F. Supp. 408 (N.D. Ill. 1969) ...........................................................................................12

*Corwin v. KKR Fin. Holdings LLC*,
  125 A.3d 304 (Del. 2015) .......................................................................................................13

*Dougherty v. Carver Fed. Sav. Bank*,
  112 F.3d 613 (2d Cir. 1997)....................................................................................................10

*Edgar v. MITE Corp.*,
  457 U.S. 624 (1982)................................................................................................................11

*Fiala v. Metropolitan Life Insurance Co.*,
  776 N.Y.S. 2d 29 (2004) ......................................................................................................9, 10

*Heritage Healthcare Servs., Inc. v. Beacon Mut. Ins. Co.*,
  2004 WL 253547 (R.I. Super. Jan. 21, 2004) .........................................................................11

*Jones v. Connors*,
  2012 WL 4361500 (N.D. Ill. Sept. 20, 2012) .........................................................................14

*LaSalle Bank Nat'l Ass'n v. Paramont Props.*,
  588 F. Supp. 2d 840 (N.D. Ill. 2008) ......................................................................................14

*Lower v. Lanark Mut. Fire Ins. Co.*,
  448 N.E.2d 940 (Ill. App. Ct. 1983) .......................................................................................12

*Ordower v. Office of Thrift Supervision*,
   999 F.2d 1183 (7th Cir. 1993) ....................................................................................9, 10, 12

*Ormond v. Anthem, Inc.*,
   2008 WL 906157 (S.D. Ind. Mar. 31, 2008)............................................................................9

*Ormond v. Anthem, Inc.*,
   799 F. Supp. 2d 910 (S.D. Ind. 2011) ..............................................................................11, 12

*Rieff v. Evans*,
   620 N.W.2d 278 (Iowa 2001) ...............................................................................................11

*Rosario v. Ret. Bd. of Policemen's Annuity & Benefit Fund*,
   743 F.3d 531 (7th Cir. 2014) ..................................................................................................8

*Shlensky v. Wrigley*,
   237 N.E.2d 776 (Ill. App. Ct. 1968) .....................................................................................13

*In re Volcano Corp. Stockholder Litig.*,
   143 A.3d 727 (Del. Ch. 2016)..........................................................................................13, 14

**Statutes**

215 ILCS 5/59.1................................................................................................................. *passim*

735 ILCS 5/3-103 ......................................................................................................................8

**INTRODUCTION**

Plaintiff complains that the Members Mutual plan of demutualization prevented him from buying as much stock in Vericity as he wanted to buy. Compl. ¶ 3. Even though every share of Vericity stock was offered on a first-priority basis to Plaintiff and his fellow policyholders under a plan permitted by Illinois law and approved by the Illinois Department of Insurance, Plaintiff says he should have been allowed to buy any stock that his fellow members chose not to buy—up to 5 percent of the new, publicly traded company. *Id.* ¶¶ 80-81, 101-02, 109, 114, 116, 126; Br. at 1.

Defendants explained in their motion to dismiss why this theory, under each claim asserted in the Complaint, was both time-barred and legally insufficient. In response, Plaintiff tries to reshape his grievance into claims he did not plead. He now argues that he is *not* challenging the state-approved plan that gave him a limited right to buy shares in Vericity. *See* Opp. at 2; *see also id.* at 11 ("Plaintiff is not challenging the validity of the administrative ruling by the Department."), 12-13 ("Plaintiff is not seeking to overturn regulatory approval for the demutualization plan."), 17 ("Plaintiff does *not* seek to set aside the Department's approval."). But if Plaintiff means what he says and is not challenging the plan that capped his right to buy stock at 124 shares, then he has no case: This supposedly unfair limitation is the sole basis for his claimed injury. *See* Compl. ¶¶ 80-81, 101-02, 109, 114, 116, 126. In other words, if the Court takes Plaintiff at his word, then he has argued himself out of court.

Hedging his bets—and contradicting his unequivocal statements that he is not challenging the state-approved plan of demutualization—Plaintiff says elsewhere in his brief that "the thrust" of his lawsuit is that he and other policyholders were "arbitrarily constrained from purchasing additional shares beyond their allotment and deprived of the financial benefits of ownership in the new entity." *See* Opp. at 22. In other words, Plaintiff admits that he is

1

challenging the state-approved plan of demutualization after all—the plan that "arbitrarily constrained" his right to buy more stock. If the Court takes Plaintiff at his word here, then his claims must be dismissed for the reasons outlined in Defendants' opening brief.

In an effort to salvage his case, Plaintiff points to two events that he erroneously claims fall outside the state-approved plan. First, he cites Vericity's distribution of a special dividend in December 2019. Plaintiff's brief questions the fairness of any distribution at all, but his Complaint asserts only that Plaintiff was entitled to a greater share of the distribution than he received. He thinks he should have been allowed to buy more stock in Vericity, which would have entitled him to more of the distribution. *See* Compl. ¶¶ 102, 109, 116, 126. Put differently, the only injury Plaintiff says he suffered as a result of the special distribution ties back to the state-approved plan of allocation.

Plaintiff's second theory is that the stand-by purchaser, Apex Holdco, unfairly purchased a majority share of Vericity. This theory fares no better. The possibility that Apex Holdco would acquire a majority of Vericity's shares was expressly described in the plan approved by the Department of Insurance. It was not some secret plot to constrain the rights of members, who collectively enjoyed a first-priority right to buy every share of Vericity's stock. As explained in the Prospectus, after members and others exercised their subscription rights, if all shares had not been purchased through the exercise of those rights, Apex Holdco agreed to buy certain amounts of stock necessary to meet the offer minimum. This part of the plan mitigated "the difficulty Members Mutual would have executing a stand-alone subscription rights conversion." Ex. B (Prospectus) at 94. And once again, Plaintiff's only basis for complaining about Apex Holdco's acquisition of shares is that it meant he could not buy them. Apex Holdco's purchase, he contends, was tainted by "the unnecessary constraints placed on Plaintiff and the other members'

purchase rights." *See* Opp. at 24-25. In other words, Plaintiff is yet again complaining that he was not allowed to buy more stock. He had no such right, and he did not file suit within the limitations period. As a result, his claims should be dismissed.

## ARGUMENT

### I. Plaintiff's belated attempts to restyle his Complaint are unavailing because his only alleged injury is the share allocation under the demutualization plan.

The gist of the Complaint is that "the members of the Class, including without limitation Plaintiff Rokowsky, have been damaged because they were denied the ability to acquire more shares of Vericity's stock and participate in its share price appreciation and special one-time cash distribution." Compl. ¶ 102; *see also, e.g.*, *id.* ¶¶ 3, 80-81, 109, 114, 116, 126. The only injury Plaintiff claims to have suffered is the lost opportunity to buy more stock in Vericity. While Plaintiff now says he is not challenging the plan of allocation or the Department of Insurance's approval of it, *see* Opp. at 2, 11, 12-13, 17, his Complaint is entirely rooted in that very plan. It was the plan, after all, that allocated purchase rights to members based on their contribution to surplus, which meant that Plaintiff, whose contribution to surplus had been negligible, was given the right to buy 124 shares at $10 per share—the same price paid by all other purchasers.

For the reasons explained in Defendants' motion to dismiss, the fact that the Complaint is really an attack on the plan of allocation means it must be dismissed. Faced with that reality, Plaintiff now tries to reframe his Complaint to make it seem like something it is not: an attack on actions unrelated to the demutualization plan.

**Cash dividend to Vericity stockholders.** Plaintiff suggests in his brief that he was injured not by the demutualization per se, but instead by the cash dividend paid to Vericity stockholders in December 2019 from excess capital, several months after the demutualization. *See, e.g.*, Opp. at 2, 11, 13-14, 22-23 n.13; Ex. B (Prospectus) at 11. Plaintiff describes the

3

dividend as a "windfall" for Apex Holdco and Vericity's officers and directors, *see* Opp. at 10, but this "windfall" was merely a partial return of their invested capital. Each stockholder (including Plaintiff) paid $10 per share, and through the dividend each stockholder (including Plaintiff) received $6.25 per share. *See* Compl. ¶ 81. Plaintiff's only complaint is that, as a result of the state-approved allocation of subscription rights, he was not able to purchase a sufficiently large share of the ownership in Vericity, which in turn yielded a smaller dividend for him than he would have liked. *Id.* ¶ 82. This is just another way of saying that Plaintiff was not given the right to buy as much stock as he wanted.

Moreover, the possibility of a cash dividend was no secret. The cover page of the Prospectus informed members that some proceeds of the offering "may be used to pay a special dividend." Ex. B (Prospectus) at 1. This possibility was described in detail throughout the Prospectus. *See*, *e.g., id.* at 11-12, 103. The Prospectus also advised that if Apex Holdco acquired a majority of Vericity shares, it "would receive a majority of the amount of any excess capital distributed to stockholders as a special dividend in proportion to its stock ownership"—the precise issue Plaintiff challenges in his Opposition. Pl. Ex. A (Unexcerpted Prospectus) at 12 (setting out potential projected dividend amounts and corresponding total payout); *see also id.* at 34.

**Role of Apex Holdco.** Plaintiff argues that in addition to the cash distribution, he challenges unspecified "conduct surrounding" the standby purchaser agreement with Apex Holdco that Plaintiff argues was "undisclosed to the Department." Opp. at 10, 13. Plaintiff says this "conduct" was distinct from the demutualization itself because it "put a private equity firm, and Vericity's officers, directors, and management in a position to reap tens of millions of dollars from the transaction." Opp. at 13; *see also, e.g.*, *id.* at 10, 15. But the standby purchaser

4

agreement with Apex Holdco was part of the demutualization plan approved by the Department of Insurance. *See* Ex. C (Plan) § 3(d) (explaining, *e.g.*, that Vericity may issue shares "to the Standby Purchaser"), *see also id.* §§ 2.44, 2.45, 7. Indeed, the demutualization statute *requires* Department approval for a plan, like this one, involving a private placement. To grant approval, the Department must find that the private placement is "fair and equitable to the eligible members." 215 ILCS 5/59.1(6)(e).[1] Apex Holdco's role was separately approved by the Department of Insurance under the laws regulating Illinois insurance holding companies. Ex. B (Prospectus) at 95 (noting Department's approval of the standby purchaser's commitment).

Plaintiff's only retort is that, while the Prospectus and plan explained Apex Holdco's role, they should have disclosed that "shifting the company away from the members and into the hands of Apex was actually Defendants' desired outcome." Opp. at 10-11; *see also id.* at 8; *see, e.g.*, Ex. B (Prospectus) at 27. But it was not at all certain that Apex Holdco would take a majority shareholder position in Vericity after the transaction. If the members had purchased all the shares allotted to them, or had even come close, Apex Holdco could not have purchased a single share. Ex. C (Plan) § 3(d); Ex. B (Prospectus) at 96-97.

Similarly, Plaintiff complains that, as part of Apex Holdco's agreement to serve as the standby purchaser, it offered an incentive program to certain Vericity employees, directors, and service providers. Ex. B (Prospectus) at 11; *see also* Pl. Ex. A (Unexcerpted Prospectus) at 130; *see* Opp. at 2-3, 14, 20, 23 n.13. But this incentive program, which was entirely proper, could only benefit the Plaintiff, as the benefit of enhanced director and officer performance would be

---

[1] Plaintiff's suggestion that a public rather than a private offering is "a requirement of Illinois' Code," Opp. at 6, misconstrues the statute. The statute permits public offerings if members undersubscribe, but it also permits private offerings like the one to Apex Holdco. *See* 215 ILCS 5/59.1(6)(e).

5

shared by all shareholders while the cost of the plan would be borne by Apex Holdco. The only allegation with respect to the incentive plan is that it somehow caused Defendants to grant some unspecified preference to Apex Holdco, thereby preventing Plaintiff from being allocated the right to buy more shares than the plan allocated to him. And far from being "separate and apart from" the plan (Opp. at 13), the equity incentive plan was fully disclosed in the Prospectus, *see* Ex. B at 11; *see also id.* at 130—a document that was among the materials reviewed by the Department of Insurance in connection with its approval of the plan. 215 ILCS 5/59.1(3)(b)(i)(C).

In short, Plaintiff's efforts to save his complaint by pointing to matters "outside" the plan of demutualization are without merit.

## II. Plaintiff's Complaint arises out of acts taken under the demutualization statute; as a result, it is barred by the 30-day statute of limitations.

Each of the actions Plaintiff challenges "arise out of acts taken under" the Illinois demutualization provision. *See* 215 ILCS 5/59.1(15). This means his action is time-barred.

Plaintiff does not dispute that his action was filed after the 30-day deadline set by the statute. Instead, he argues that the statute of limitations does not apply because he is not challenging "the final approval of the Plan by the Department [of Insurance]" or the limitation on Plaintiff's "right to buy additional stock under that Plan," but is instead challenging "Defendants' conduct" surrounding the standby purchaser agreement with Apex Holdco. *See* Opp. at 10. As explained above, this is not true: The only injury Plaintiff claims to have suffered arises directly from the allocation formula in the demutualization plan.

Even under Plaintiff's own theory, his claims would be time-barred. The 30-day statute of limitations sweeps broadly, encompassing "[a]ny action . . . arising out of acts . . . taken under" the demutualization statute. *See* 215 ILCS 5/59.1(15). The phrase "arising out of" "has

6

been defined broadly" and "clearly covers any injuries that have their origin in, or are incidental to," the referenced matter. *Brucker v. Mercola*, 886 N.E.2d 306, 317-19 (Ill. 2007). Regardless of how Plaintiff tries to characterize (or mischaracterize) his Complaint, it unquestionably arises out of acts taken under the demutualization statute.

Plaintiff claims the limitations period should be tolled because (1) "30 days is a short limitations period," and (2) "it would have been impossible for Plaintiff to file a civil action within 30 days" because he could not have known "the nature of his injuries" until the December 9, 2019 dividend. Opp. at 11. Neither point withstands scrutiny. As to the first, Plaintiff provides no support for the idea that he can be excused from complying with a statute of limitations simply because he believes it is relatively short. As to the second, because Plaintiff's supposed injury is that he was not permitted to buy an amount of stock disproportionate to his contribution to surplus, Plaintiff knew he had been "injured" by the time his request to buy more stock was "rejected outright." *Id.* at 9. Plaintiff even alleged that he bought his shares "[u]nder protest," Compl. ¶ 14, a sure sign that he knew of his alleged injury. No tolling is appropriate.

Even if tolling were applied, it would not save Plaintiff's claims. Plaintiff has suggested that tolling might have stopped the clock from running until November 6, 2019, when the cash distribution was announced, Compl. ¶ 81, or until December 9, 2019, when the cash distribution was paid and, by his own admission, "Plaintiff was on notice of the nature of the damages." Opp. at 10-11. Using the later of those dates as the starting point for the 30-day limitations period, Plaintiff's lawsuit would still be untimely: It was filed on January 21, 2020, more than 30 days after Plaintiff admits he knew of his alleged injury.

Finally, Plaintiff claims to make a constitutional challenge to the statute of limitations. Opp. at 2; *see also id.* at 12. But Plaintiff does not cite a single authority in support of this

7

argument, and the similar Illinois Administrative Review Law limitations period, 735 ILCS 5/3-103, has repeatedly withstood constitutional challenges. *Rosario v. Ret. Bd. of Policemen's Annuity & Benefit Fund*, 743 F.3d 531, 537 (7th Cir. 2014) (denying due process challenge and noting that "[t]hirty-five days may not be long, but Illinois courts have long enforced this requirement, the purpose of which is to hasten the procedure of administrative review and avoid undue delay"); *Carver v. Nall*, 701 N.E.2d 1180, 1186 (Ill. App. Ct. 1998) ("a strict application of the Act's 35–day limitations period does not violate due process"), *aff'd*, 714 N.E.2d 486 (Ill. 1999). The statute of limitations should be enforced as written, and all of Plaintiff's claims should be dismissed as untimely.

**III.    The Complaint challenges conduct approved by the Illinois Department of Insurance, so it should be dismissed as an improper challenge under the Illinois Administrative Review Law.**

Because the only injury Plaintiff alleges is the supposedly unfair allocation of shares, and because this "unfair" plan of allocation was approved by the Illinois Department of Insurance as "fair and equitable," 215 ILCS 5/59.1(3)(a)(iii), Plaintiff's claims are an attack on that approval and must adhere to the Administrative Review Law.

Plaintiff does not claim that his Complaint meets the requirements of that law, but instead says his Complaint challenges something other than the Department's approval. For all the reasons explained above in the Introduction and in Section I, that is incorrect. And Illinois courts prohibit collateral attacks, such as claims for breach of fiduciary duty, breach of contract, or unjust enrichment, that challenge a ruling subject to the Administrative Review Law. Plaintiff ignores the cases Defendants cited on this point. *See* Br. at 13. Nor can he distinguish those cases, since each of his challenges is precisely the kind of "collateral attack" Illinois courts have said must be dismissed. Plaintiff relegates to a single paragraph the authorities holding that, in the specific context of challenges to a demutualization plan, courts defer to the agency

8

authorized to approve the plan. *See id.* at 13-15. Every court to consider the issue has come to the same conclusion. *Id.*

Plaintiff suggests otherwise by citing three cases—*Ormond v. Anthem, Inc.*, 2008 WL 906157 (S.D. Ind. Mar. 31, 2008), *Ordower v. Office of Thrift Supervision*, 999 F.2d 1183 (7th Cir. 1993), and *Fiala v. Metropolitan Life Insurance Co.*, 776 N.Y.S. 2d 29 (2004)—but he mischaracterizes their holdings. In *Ormond*, some members of Anthem, an Indiana mutual insurance company, did not specify whether they elected to receive stock or cash in a demutualization and were not told which form of consideration they would receive until well after the transaction. 2008 WL 906157, at *3, *30. The *Ormond* plan was subject to approval by the Indiana Commissioner of Insurance, but the day after the Commissioner approved the plan, and only three days before the members voted (and again on the day of the vote), Anthem made "significant changes" to its plan. *Id.* at *4. Under those unique circumstances, the court held that members could not have known about their claims before the expiration of the statute of limitations and that their common law claims were not challenging the decision of the Indiana Commissioner of Insurance. *Id.* at *21, *23. While Plaintiff attempts to shoehorn his claims into these facts, there were no changes to the plan of conversion approved by the Illinois Department of Insurance.

Plaintiff also cites *Ordower* and *Fiala*, but those cases confirm that this case must be dismissed. They held that claims attacking "the substance of the transaction," including common law claims like breach of contract and breach of fiduciary duty, are improper challenges to the agency's decision. *Ordower*, 999 F.2d at 1188 ("[t]o the extent Ordower was attacking the substance of the transaction," the dismissal of his claims was "unexceptionable" since, when a decision is committed to agency discretion, "judges may not enjoin or penalize action that the

9

agency has approved or that is the natural outcome of the agency's decision"); *Fiala*, 776 N.Y.S. 2d at 31-33 (dismissing all claims except those for fraud and nondisclosure). The only claims *not* dismissed in those actions were claims for "defects" in the materials provided to members.

The Complaint identifies no defect in disclosure. Plaintiff belatedly claims that the cover letter to members was somehow "deceptive in its omission of critical information," Opp. at 15; *see also id.* at 6-7, but he admits that the letter was accompanied by the Prospectus and the plan, which contained the very information Plaintiff says was omitted. *See id.* at 7, 15. Plaintiff asserts that the plan and Prospectus were somehow "flawed" but never explains how. And Plaintiff's cited cases hold that courts should not allow belated attempts to recast challenges to the fairness of a transaction as fraud claims. *See Ordower*, 999 F.2d at 1188 (declining to dismiss fraud claims, noting that "Ordower may not wage a collateral attack" on the merits of the transaction via a fraud claim); *Dougherty v. Carver Fed. Sav. Bank*, 112 F.3d 613, 622 (2d Cir. 1997) (cited Opp. at 16).

**IV.     Plaintiff's fiduciary duty claims should also be dismissed because mutual company directors do not owe a fiduciary duty to members under Illinois law and the claims are barred by the business judgment rule.**

   **A.     Illinois law provides that directors of Illinois mutual insurance companies do not owe a fiduciary duty to members.**

In addition to the bases for dismissal described above, Plaintiff's fiduciary duty claim must be dismissed because the relationship between members and directors of Illinois mutual insurance companies is contractual, and directors (and correspondingly, the companies themselves) do not owe members a fiduciary duty. *See* Br. at 16-17 (citing *Lubin v. Equitable*

*Life Assurance Soc'y*, 61 N.E.2d 753, 756 (Ill. App. Ct. 1945); *Andrews v. Equitable Life Assurance Soc'y*, 124 F.2d 788, 789 (7th Cir. 1941) (applying Illinois law); Compl. ¶ 119.[2]

Plaintiff does not cite a single case holding that fiduciary duties are owed to mutual company members under Illinois law. Instead, he cites cases from other jurisdictions decided under the laws of those states. *See* Opp. at 19-20 (citing *Ormond*, 799 F. Supp. 2d at 935 (Indiana law); *Rieff v. Evans*, 620 N.W.2d 278, 291 (Iowa 2001) (Iowa law); *Heritage Healthcare Servs., Inc. v. Beacon Mut. Ins. Co.*, 2004 WL 253547, at *5 (R.I. Super. Jan. 21, 2004) (Rhode Island law)). But the law of those jurisdictions does not apply here. *Edgar v. MITE Corp.*, 457 U.S. 624, 645 (1982) (holding that, with respect to "internal affairs," *i.e.*, "matters peculiar to the relationships among or between the corporation and its current officers, directors, and shareholders," the law of the state of incorporation applies). Illinois law governing the relationship between mutual company directors and members differs in crucial ways from the law of other states. For instance, under Illinois law, members are not entitled to stock or cash in a demutualization, as they are under Indiana law; instead, they are entitled to *purchase* shares under a state- and member-approved plan of allocation. Similarly, Plaintiff's invocations of *Ormond*'s dictum equating mutual insurance company members with "garden-variety shareholders," Opp. at 4 n.4; *see also id.* at 20-21, are inconsistent with Illinois law. Members have certain voting and other rights under Illinois statutes, but unlike equity shareholders, they are not "owners" of the company. Under Illinois law, members have no true equity stake at all:

---

[2] Plaintiff argues that the Illinois cases cited in Defendants' brief involve claims about "undistributed surplus funds," not demutualization. Opp. at 21 n.11. But Plaintiff does not explain why this distinction is relevant. In fact, a claim for distribution of surplus funds was at issue in one of the out-of-jurisdiction cases Plaintiff cites as authority for the proposition that fiduciary duties *are* owed. *See Heritage Healthcare Servs., Inc.*, 2004 WL 253547, at *1, *4-5 (cited Opp. at 19).

11

"It is not the expectation of anyone buying these kinds of policies that they are going to be sharing in the profits of a company." *Collins v. Baylor*, 302 F. Supp. 408, 411 (N.D. Ill. 1969); *cf. Ordower*, 999 F.2d at 1185 ("Nominally the customers own the mutual, but it is ownership in name only."). Because Members Mutual was and is organized under Illinois law, Compl. ¶ 1, Illinois law applies to Plaintiff's fiduciary duty claims. *CDX Liquidating Tr. v. Venrock Assocs.*, 640 F.3d 209, 212 (7th Cir. 2011).

It is of no help to Plaintiff to invoke fiduciary duties supposedly owed by the Vericity or Members Mutual entities. Opp. at 20-21. Plaintiff cites *Ormond*, 799 F. Supp. 2d at 936, but that case acknowledges the "general rule" that "the directors, and not the corporation itself, owe a fiduciary duty to shareholders." *Id. Ormond* departs from the general rule in light of the "special relationship" Indiana courts have found between Indiana mutual companies and their members. *Id.* (citing *Erie Ins. Co. v. Hickman by Smith,* 622 N.E.2d 515, 518 (Ind. 1993)). Again, this is not the law in Illinois, which treats the relationship between Illinois mutual companies and their members as purely contractual. *Collins*, 302 F. Supp. at 411 ("There is nothing about . . . mutuals that is at variance with insurance tradition and business custom," instead, this type of insurance "fall[s] squarely within the letter and the tradition of the Illinois Insurance Code").

      **B.**      **The business judgment rule prohibits second-guessing of the business judgment exercised by Members Mutual directors and approved by its members.**

Plaintiff's arguments about the business judgment rule are likewise unpersuasive. Plaintiff does not identify anything about the demutualization that comes close to the fraudulent, illegal, or oppressive conduct required to take directors' conduct outside the protection of the business judgment rule. *Lower v. Lanark Mut. Fire Ins. Co.*, 448 N.E.2d 940, 945 (Ill. App. Ct. 1983) ("To come within the ambit of the rule, directors must be diligent and careful in performing the duties they have undertaken and they must not act fraudulently, illegally or

oppressively or in bad faith."); *Shlensky v. Wrigley*, 237 N.E.2d 776, 778 (Ill. App. Ct. 1968) (dismissal affirmed where the complaint alleged no "fraud, illegality or conflict of interest").[3]

Plaintiff argues that the directors "arbitrarily constrained" his share purchase to favor Apex Holdco. Opp. at 22. But in addition to mischaracterizing the plan, this theory implausibly assumes that Defendants' choice of a standby purchaser to, among other things, mitigate "the difficulty Members Mutual would have executing a stand-alone subscription rights conversion and existing as a stand-alone public company," Ex. B (Prospectus) at 94, somehow constituted fraud, illegality, or conflict of interest. There is no support for this contention where (1) the Illinois Department of Insurance approved the standby purchaser and its right to purchase shares as part of its approval of the overall plan of conversion, and (2) the members of Members Mutual overwhelmingly voted in favor of the transaction. In seeking to upset the demutualization, Plaintiff is not only asking the Court to second-guess the informed decision of the directors and the Illinois Department of Insurance; he is asking this Court to set aside the vote of the members themselves. The Court should reject this invitation. *Cf. Corwin v. KKR Fin. Holdings LLC*, 125 A.3d 304, 313 (Del. 2015) ("When the real parties in interest—the disinterested equity owners— can easily protect themselves at the ballot box by simply voting no, the utility of a litigation-intrusive standard of review promises more costs to stockholders in the form of litigation rents and inhibitions on risk-taking than it promises in terms of benefits to them."); *In re Volcano*

---

[3] Plaintiff's contention that the business judgment rule does not apply at the motion to dismiss stage (Opp. at 21 n.12) is incorrect. As Plaintiff's own authority explains, the business judgment rule is a "rebuttable presumption that arises as a matter of law; the burden is thus on the plaintiff to present sufficient evidence to rebut it." *See Babbitt Municipalities, Inc. v. Health Care Serv. Corp.*, 2016 IL App (1st) 152662, ¶ 47 (cited Opp. at 22) ("[i]n the context of a section 2–615 motion to dismiss, . . . a plaintiff alleging injury as a result of a business decision made by a company's board of directors must plead facts that, if proved, would rebut the [business judgment rule's] presumption" in favor of the directors).

*Corp. Stockholder Litig.*, 143 A.3d 727, 741, 750 (Del. Ch. 2016) ("upon a fully informed vote by a majority of a company's disinterested, uncoerced stockholders," the business judgment rule is irrebuttable).

### V. Plaintiff's remaining claims should also be dismissed for the additional reasons set out in the Defendants' opening brief.

Plaintiff makes little effort to defend his remaining claims, and they too should be dismissed. Br. at 18-20. Plaintiff's negligence claim has been forfeited because Plaintiff did not address Defendants' arguments for its dismissal. *See Jones v. Connors*, 2012 WL 4361500, at *7 (N.D. Ill. Sept. 20, 2012). Plaintiff raises the duty of good faith and fair dealing for the first time in his brief, but his Complaint did not make any claim under that theory. *Compare* Opp. at 23-24 *with* Compl. ¶¶ 118-27. Even if it had, that claim would fail for the same reasons as his breach of contract claim. *LaSalle Bank Nat'l Ass'n v. Paramont Props.*, 588 F. Supp. 2d 840, 858 (N.D. Ill. 2008) ("Because the duty of good faith and fair dealing is merely a tool to aid in interpreting contract terms, the Court restricts the following analysis to those facially viable allegations which relate to explicit contract terms."); *Beraha v. Baxter Health Care Corp.*, 956 F.2d 1436, 1443 (7th Cir. 1992) ("[U]nder Illinois law, the covenant of good faith and fair dealing has never been an independent source of duties for the parties to a contract.").

### CONCLUSION

All of Plaintiff's claims are time-barred, and all are deficient on the merits. This Court should dismiss the Complaint with prejudice, award Defendants their costs, and award Defendants any other appropriate relief.

Dated: July 23, 2020　　　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　　VERICITY INC., MEMBERS MUTUAL,
　　　　　　　　　　　　　　　　　　　　FIDELITY LIFE ASSOCIATION, APEX

14

HOLDCO L.P., ERIC RAHE, CALVIN DONG, SCOTT PERRY, RICHARD HEMMINGS, JAMES E. HOHMANN, JAMES SCHACHT, LINDA WALKER BYNOE, STEVEN GROOT, JOHN FIBIGER, and NEIL ASHE

By: */s/ Eric S. Mattson*
One of their attorneys

Walter C. Carlson
Eric S. Mattson
Elizabeth Y. Austin
Sidley Austin LLP
One South Dearborn St.
Chicago, Illinois 60603
Phone: (312) 853-7000
*wcarlson@sidley.com*
*emattson@sidley.com*
*laustin@sidley.com*

15

**CERTIFICATE OF SERVICE**

    I hereby certify that on July 23, 2020, I caused a copy of the foregoing Defendants' Reply in Support of Motion to Dismiss to be filed via the electronic filing system for the U.S. District Court for the Northern District of Illinois, which will send a Notice of Electronic Filing to all attorneys of record.

                                                                                            */s/ Elizabeth Y. Austin*