IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| YITZCHOK ROKOWSKY, | ) |
| Plaintiff, | ) ) ) |
| | ) No. 20-cv-00456 |
| v. | ) |
| | ) Judge Andrea R. Wood |
| VERICITY, INC., et al., | ) |
| Defendants. | ) ) ) |

**MEMORANDUM OPINION AND ORDER**

This case arises out of the demutualization of Defendant Members Mutual Holding Company ("Members Mutual")—in other words, its conversion from a mutual company to a stock form organization. Plaintiff Yitzchok Rokowsky was a member of Members Mutual until its conversion in 2019. Rokowsky has brought this putative class action pursuant to this Court's federal diversity jurisdiction, alleging various violations of Illinois law by Members Mutual and other companies involved in its demutualization, Defendants Vericity, Inc. ("Vericity"), Fidelity Life Association ("Fidelity Life"), Apex Holdco L.P. ("Apex Holdco"), as well as against various members of Vericity's board of directors, including Defendants Eric Rahe, Calvin Dong, Scott Perry, Richard Hemmings, James E. Hohmann, James Schacht, Linda Walker Bynoe, Steven Groot, John Fibiger, and Neil Ashe (collectively, "Individual Defendants"). Defendants have filed a motion to dismiss Rokowsky's Complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). (Dkt. No. 32.) For the reasons given below, Defendants' motion is granted.

**BACKGROUND**

Because Defendants move to dismiss under Rule 12(b)(6), the Court accepts as true all well-pleaded facts in the Complaint and views them in the light most favorable to Rokowsky as the nonmoving party. *Bell v. City of Country Club Hills*, 841 F.3d 713, 716 (7th Cir. 2016) (citation omitted). The Complaint alleges as follows.

Rokowsky lives in New Jersey. (Compl. ¶ 14, Dkt. No. 1.) He and the putative class members held life insurance policies with Fidelity Life, a company organized under the laws of Illinois. (*Id.* ¶¶ 1, 16.) Until 2019, Rokowsky and other policyholders were members of Fidelity Life's parent company, Members Mutual (also organized under the laws of Illinois). (*Id.* ¶¶ 1, 17.) But in 2018, Members Mutual adopted a plan to convert to a stock form organization ("Plan"), which was to be wholly owned by Vericity, a stock holding company incorporated in Delaware and based in Illinois. (*Id.* ¶¶ 2, 15, 17.) As explained by one district court:

> Mutual insurance companies are owned by their policyholders (*i.e.* members), who, like garden-variety shareholders, have voting rights and share in the company's financial success or failure. Over the course of this century, mutual companies have lost favor, primarily because they face difficulty in raising capital compared to publicly-traded companies. This problem has led hundreds of mutual companies to convert to stock companies over the course of the last 75 years, through a process known as a "demutualization."

*Ormond v. Anthem, Inc.*, 799 F. Supp. 2d 910, 913 (S.D. Ind. 2011) (citing 3 Lee R. Russ & Thomas F. Segalla, *Couch on Insurance* § 39:43 (3d ed. 2005)). Demutualizations are generally regulated by state statutes. *Id.*

Members Mutual adopted the Plan in 2018: Vericity would acquire all of Members Mutual's stock, and shares in Vericity would be publicly traded on NASDAQ under the ticker symbol "VERY." (Compl. ¶ 2.) But before the public offering, Rokowsky and other members of Members Mutual would be offered subscription rights—or rights to buy shares in Vericity for

$10.00 per share. (*Id.*) For the Plan to be completed, Vericity needed to meet three requirements: (1) sell a minimum of 14,875,000 shares of common stock; (2) obtain the approval of two-thirds of Vericity shareholders; and (3) obtain the votes of two-thirds of Members Mutual members at a special meeting. (*Id.* ¶¶ 5, 48.) To ensure that the minimum number of shares would sell, Vericity, Members Mutual, and Fidelity Life entered into an agreement with a private equity fund, Apex Holdco,[1] on October 25, 2018. (*Id.* ¶ 49.) Pursuant to that agreement, Apex Holdco would serve as a "stand-by purchaser." (*Id.*) Essentially, Apex Holdco agreed to buy any remaining shares in the event of an undersubscription. (*Id.* ¶ 5.)

Vericity filed a prospectus with the SEC on June 20, 2019 that contained a section specifically addressed to Members Mutual members like Rokowsky and providing an overview of the Plan. (*Id.* ¶¶ 15, 64.) The prospectus explained that unless Vericity sold at least 7,437,500 shares in the initial subscription and public offering, Apex Holdco would obtain a majority of the shares as the stand-by purchaser. (*Id.* ¶ 70.) On July 29, 2019, Rokowsky received a copy of the Plan and a stock purchase form that allowed him to purchase up to 124 shares of Vericity stock for a total of $1,240. (*Id.* ¶ 14.) Rokowsky contacted Members Mutual's board of directors to attempt to purchase more stock, but the board denied his request. (*Id.*) As a result, Rokowsky bought 124 shares in Vericity. (*Id.*) Members Mutual's board of directors approved the Plan for

---

[1] None of the Individual Defendants are alleged to be citizens of Rokowsky's state of New Jersey. The Complaint does not provide any information concerning the citizenship of Apex Holdco, however. For purposes of establishing diversity jurisdiction, the Court takes judicial notice of Apex Holdco's registration with the U.S. Security and Exchange Commission ("SEC"). *Orgone Cap. III, LLC v. Daubenspeck*, 912 F.3d 1039, 1044, 1048–49 (7th Cir. 2019) (holding that courts may take judicial notice of matters of public record that are not subject to reasonable dispute in their Rule 12(b)(6) analyses). According to the SEC, Apex Holdco is incorporated in Delaware and has a New York address as its business address. *See* SEC, Apex Holdco L.P., https://sec.report/CIK/0001783445 (last visited Sept. 26, 2022). Thus, it appears that Apex Holdco is a citizen of Delaware and New York, and that complete diversity therefore exists between Rokowsky and Defendants. The Complaint sets forth facts concerning the citizenships of each Individual Defendant. (*See* Compl. ¶¶ 20–29.) Thus, it appears that complete diversity exists between Rokowsky and Defendants for jurisdictional purposes.

demutualization on July 31, 2019. (*Id.* ¶ 43.) And the board announced that there would be a special meeting for members to vote on the Plan on August 6, 2019. (*Id.* ¶ 60.)

Members Mutual's demutualization occurred sometime in 2019 (the exact date is not clear from the Complaint). Vericity reported that it was offering between 14,875,000 and 20,125,000 total shares of common stock. (*Id.* ¶ 44.) According to the Complaint, Vericity allocated 3,501,648 shares to Members Mutual members like Rokowsky. (*Id.* ¶ 61.) It allocated 2,123,675 shares to its directors and officers. (*Id.*) Apex Holdco purchased 11,373,352 shares, which the Complaint describes as 76.5% of the total 14,875,000 outstanding shares. (*Id.*) But it is not clear from the Complaint if Vericity ultimately sold exactly 14,875,000 shares, or if it sold a greater number. (The sum of the shares allocated to members, directors, and officers and the shares Apex Holdco purchased adds up to 16,998,675.) Regardless, the Complaint clearly alleges that Apex Holdco obtained a controlling majority of the shares in Vericity. (*Id.*) After the initial public offering, Apex Holdco created an incentive plan reserving certain "Class B" nonvoting units in Apex Holdco for Vericity's employees, directors, and advisory board members. (*Id.* ¶ 63.) Apex Holdco did not include Rokowsky and other former members of Members Mutual in the incentive plan. (*Id.*)

Rokowsky alleges that Vericity and other Defendants unlawfully restrained his and other members' purchases of stock so that Apex Holdco was guaranteed to acquire a controlling majority of the shares. (*Id.* ¶ 70.) According to the Complaint, Vericity planned the demutualization this way so that it could avail itself of NASDAQ's "controlled company" exception and avoid certain corporate governance requirements. (*Id.* ¶ 71.) As a result, Rokowsky filed this suit against Vericity, Members Mutual, Fidelity Life, Apex Holdco, and the ten Individual Defendants. All Individual Defendants are current or former directors of Vericity's

4

board—some also served on Members Mutual's board. Hemmings served on Members Mutual's board beginning in 2007 and Vericity's board beginning in 2013. (*Id.* ¶ 23.) Hohmann previously served as President and Chief Executive Officer of Members Mutual and has served as a director and Chief Executive Officer of Vericity since 2014. (*Id.* ¶ 24.) Schacht has served on Members Mutual's board since 2007 and Vericity's board of directors since 2013. (*Id.* ¶ 25.) Bynoe, Groot, Fibiger, Ashe, Dong, and Perry are all current or former directors of Vericity's board and are not alleged to be affiliated with Members Mutual. Rahe is the current Chairman of Vericity's Board. (*Id.* ¶ 20.) Rokowsky alleges that Rahe, Dong, and Perry are also directors or officers at companies affiliated with the stand-by purchaser Apex Holdco. (*Id.* ¶¶ 20–22.) According to the Complaint, Vericity offered Hemmings, Hohmann, Schacht, Bynoe, Groot, and Fiber subscription rights to buy varying amounts of Vericity shares. (*Id.* ¶¶ 23–28.)

The Complaint asserts five causes of action under Illinois law. Count I alleges that all Defendants violated the section of the Illinois Insurance Code that governs demutualization, *see* 215 ILCS 5/59.1 ("Demutualization Statute"). Count II alleges that Vericity, Fidelity Life, Members Mutual, and Individual Defendants breached their fiduciary duties to Rokowsky and other members. Count III alleges that Vericity, Fidelity Life, Members Mutual, and Individual Defendants committed acts of negligence. Count IV claims that Vericity, Fidelity Life, and Members Mutual committed a breach of contract. And finally, Count V seeks to hold all Defendants liable under a theory of unjust enrichment.

## DISCUSSION

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is

5

facially plausible when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the alleged misconduct. *Adams v. City of Indianapolis*, 742 F.3d 720, 728 (7th Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678). While there is not a bright-line test for facial plausibility, the pleadings must present "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. The complaint must be sufficient to give defendants fair notice of the plaintiff's claim and the grounds upon which it rests. *City of Country Club Hills*, 841 F.3d at 716 (quoting *Twombly*, 550 U.S. at 555). "Additionally, the complaint's factual allegations must raise the claim above a mere 'speculative level.'" *Id.* (quoting *Twombly*, 550 U.S. at 555). Therefore, though a complaint need not contain detailed factual allegations, a plaintiff's obligation "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 716–17 (quoting *Twombly*, 550 U.S. at 555).

Defendants move pursuant to Rule 12(b)(6) to dismiss all of Rokowsky's claims. First, Defendants argue that Rokowsky's claims are barred under the 30-day statute of limitations in the Demutualization Statute. *See* 215 ILCS 5/59.1(15). Second, Defendants contend that because the Illinois Department of Insurance ("Department") signed off on their Plan of demutualization, Rokowsky needed to plead facts sufficient to allege that the Department's decision was arbitrary and capricious, but have failed to do so. Defendants also assert that Rokowsky's Complaint is procedurally flawed because he failed to add the Department as a Defendant. Next, Defendants contend that Rokowsky's common law claims fail because they are derivative of his claims under the Demutualization Statute. Finally, in the alternative, Defendants argue that all of Rokowsky's Counts fail to state claims under Illinois law.

I. **Statute of Limitations and Alleged Procedural Defects**

The Court turns first to Defendants' contentions that the Complaint is untimely and suffers from various procedural defects.

The Demutualization Statute provides that "[a]ny action challenging the validity of or arising out of acts taken or proposed to be taken under this Section shall be commenced within 30 days after the effective date of the plan [of conversion]." 215 ILCS 5/59.1(15). Elsewhere, the statute explains that the "plan shall become effective when the Director [of Insurance] has approved the plan, the members have approved the plan, and the revised articles of incorporation have been adopted." 215 ILCS 5/59.1(9). According to Defendants, that date was August 6, 2019. (Mem. in Supp. of Mot. to Dismiss at 8, Dkt. No. 33.) As proof, Defendants have attached to their brief in support of their motion the Form 8-K Vericity filed with the SEC. (*See id.* Ex. A, Form 8-K, Dkt. No. 33-2.) Rokowsky filed the present case on January 21, 2020. (*See* Compl.) Thus, if the Court were to accept Defendants' view of the effective date, Rokowsky's claims under the Demutualization Statute would indeed be time-barred.

In reviewing a Rule 12(b)(6) motion, the Court may consider "documents that are attached to the complaint, documents that are central to the complaint and are referred to in it, and information that is properly subject to judicial notice." *O'Brien v. Village of Lincolnshire*, 955 F.3d 616, 621 (7th Cir. 2020) (citation and quotation marks omitted). A complaint is not required to anticipate and defeat a statute of limitations defense. *Sidney Hillman Health Ctr. of Rochester v. Abbott Lab'ys, Inc.*, 782 F.3d 922, 928 (7th Cir. 2015). Dismissal for untimeliness under Rule 12(b)(6) is thus unusual, and only appropriate where the plaintiff pleads himself out of court by "alleg[ing] facts sufficient to establish a statute of limitations defense." *Id.* (citation and quotation marks omitted). Otherwise, questions of timeliness are generally more properly considered at the

7

summary judgment or trial stage. *Id.* (citing *Clark v. City of Braidwood*, 318 F.3d 764, 767 (7th Cir. 2003) (reversing dismissal for untimeliness because the relevant question at the Rule 12(b)(6) stage is "whether there is ***any*** set of facts that if proven would establish a defense to the statute of limitations" (citation omitted))).

In this case, the Court finds dismissal of Rokowsky's claims as untimely to be inappropriate, at least at this stage in the proceedings. Looking at the Complaint, the only information before the Court concerning the effective date of the Plan is that "Members Mutual's Board of Directors announced that a special meeting of the eligible members of Members Mutual would be held on August 6, 2019, to vote on the Plan." (Compl. ¶ 60.) While it might be inferred from the Complaint that the members approved the Plan at that meeting, the Complaint does not actually state that such action occurred. The Complaint also contains no information regarding the date on which the Department approved the Plan or the date on which the revised articles of incorporation were adopted. *See* 215 ILCS 5/59.1(9).

Defendants suggest that the Court may either take judicial notice of the Form 8-K Vericity filed with the SEC or consider it as central to the Complaint. The Form 8-K states that the Plan and "restated articles of incorporation were approved at a special meeting of eligible members on August 6, 2019." (*See* Form 8-K at 2.) The Form 8-K does not mention if or when the Department approved the Plan. (*See id.*) However, according to the prospectus Defendants attached as an exhibit, the Department approved the Plan on June 4, 2019. (*See* Mem. in Supp. of Mot. to Dismiss, Ex. B, Prospectus at 95, Dkt. No. 33-3.)

The Court concludes that it would not be appropriate to accept as true the information contained in the Form 8-K and the Prospectus at this stage of proceeding. The Complaint mentions the Form 8-K and the Prospectus, but it also expresses some skepticism as to their

8

representations. (*See* Compl. ¶¶ 61, 70.) At this stage, the Court declines to accepts their representations as true. At most, it would be appropriate to take judicial notice of the fact that Defendants filed those documents, not of every fact they contain. Given Rokowsky's skepticism, the Court also declines to accept the documents as central to his Complaint. *See Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013) (finding that it is generally only appropriate to consider documents a plaintiff refers to in his complaint if he relies upon their contents as support for his arguments).

Defendants next contend that Rokowsky's Complaint must be dismissed because it challenges the Department's administrative decision to approve the Plan without plausibly alleging that the decision was arbitrary and capricious, as required under the Illinois Administrative Review Law. *See* 215 ILCS 5/407. Defendants also argue that the Complaint should be dismissed because Rokowsky failed to name the Department as a Defendant—another requirement of that law. *See* 735 ILCS 5/3-107(a) (with certain exceptions, "in any action to review any final decision of an administrative agency, the administrative agency and all persons, other than the plaintiff, who were parties of record to the proceedings before the administrative agency shall be made defendants").

These arguments face the same barrier as Defendants' statute of limitations defense. The Complaint does not set forth any facts concerning the Department or its decision as to the Plan of demutualization. Based on the materials properly before the Court at the motion to dismiss stage, *see O'Brien*, 955 F.3d at 621, the Court lacks sufficient information concerning the Department's involvement to justify a dismissal. Defendants' argument that a heightened standard applies when reviewing administrative decisions would be more properly made in a motion for summary judgment. *Cf. Kelly v. Bd. of Educ. of McHenry Cmty. High Sch. Dist. 156*, No. 06 C 1512, 2007

WL 114300, at *2 (N.D. Ill. Jan. 10, 2007) ("[B]ecause administrative review requires examination of the underlying record, the typical vehicle for review of administrative decisions is by cross-motion for summary judgment.") Finally, even assuming that Rokowsky committed a procedural error by failing to name the Department as a defendant, the preferred remedy under the Federal Rules of Procedure is joinder, not dismissal.[2] *See Davis Cos. v. Emerald Casino, Inc.*, 268 F.3d 477, 481–82 (7th Cir. 2001).

Having determined that dismissal is not appropriate based on the statute of limitations or for any alleged procedural violation, the Court proceeds to the merits of Rokowsky's claims.

## II. Demutualization Statute

Count I of Rokowsky's Complaint alleges that all Defendants violated the Demutualization Statute, *see* 215 ILCS 5/59.1, by restricting his and other policyholders' ability to purchase outstanding shares in Vericity. (Compl. ¶ 97.) Defendants' Plan allowed all policyholders a fixed set of one hundred subscription rights and a variable number of subscriptions "determined by an actuarial formula that considers past and future contributions to Fidelity Life's surplus of all eligible members' qualifying policies in force when the Plan was adopted." (*Id.* ¶ 96.)

The Demutualization Statute requires that a plan for demutualization offer eligible members subscription rights to purchase stock in the converted stock company, as Defendants did here. *See* 215 ILCS 5/59.1(6)(c)(i). Those subscription rights must be "allocated among eligible members using a fair and equitable formula" that may "take into account how the different classes of policies of the eligible members contributed to the surplus of the mutual company." 215 ILCS

---

[2] Defendants cite numerous Illinois cases for the assertion that the procedural failure to add the Department requires dismissal. However, as a federal court sitting in diversity, this Court applies federal procedural rules. *Goesel v. Boley Int'l (H.K.) Ltd.*, 806 F.3d 414, 419 (7th Cir. 2015) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938)).

5/59.1(6)(c)(ii). Plans "shall provide that any one person or group of persons acting in concert may not acquire, through public offering or subscription rights, more than 5% of the capital stock of the converted stock company," subject to certain qualifications. 215 ILCS 5/59.1(6)(i).

The Court finds that the facts alleged in the Complaint do not support a claim that Defendants or their Plan violated the Demutualization Statute. Rokowsky suggests that Defendants should have offered members "the right to purchase shares up to Illinois's statutory cap." (Compl. ¶ 96.) But the 5% cap set forth in the statute is just that—a cap. It is not a minimum. Nothing in the Demutualization Statute required Defendants to permit Members Mutual members to purchase exactly 5% of the outstanding shares in Vericity. The statute merely required Defendants to offer subscription rights, which were to be divided among members using a "fair and equitable" formula. 215 ILCS 5/59.1(6)(c)(ii). Nothing in the Complaint plausibly suggests that the allocation was not fair and equitable. In fact, the Complaint states that the Plan used an actuarial formula based on each eligible member's contribution to Members Mutual's surplus, as the statute explicitly permits. *See id.*

Rokowsky alleges that Vericity's managers, directors, and board members "reaped additional benefits not available to Members Mutual." (Compl. ¶ 100.) But the Demutualization Statute allowed Defendants to offer subscription rights to Vericity's directors and officers. *See* 215 ILCS 5/59.1(7)(a)(i). There is no language in the statute suggesting that members' subscription rights had to be the same as directors' subscription rights. The statute does not even require that *all* shares or subscription rights be allocated fairly and equitably—merely that rights be allocated "among the eligible members using a fair and equitable formula" and "among the directors and officers by a fair and equitable formula." 215 ILCS 5/59.1(6)(c)(ii), (7)(a)(i).

In short, the Complaint's characterization of Defendants' Plan is entirely consistent with the requirements of the Demutualization Statute. Rokowsky has thus failed to state a claim under that section of the Illinois Insurance Code. Count I of the Complaint is dismissed.

### III. Breach of Fiduciary Duty and Negligence

Counts II and III of the Complaint allege that Vericity, Fidelity Life, Members Mutual, and Individual Defendants breached their fiduciary duties to Members Mutual members and acted negligently by setting an unfairly low number of subscription rights. Defendants argue that the business judgment rule defeats both claims.

The business judgment rule stands for the proposition that "[a]bsent evidence of bad faith, fraud, illegality or gross overreaching, courts are not at liberty to interfere with the exercise of business judgment by corporate directors." *Davis v. Dyson*, 900 N.E.2d 698, 714 (Ill. App. Ct. 2008) (citation and quotation marks omitted). The common-law doctrine protects directors who act with due care and loyalty from liability for honest mistakes of judgment. *Id.* Thus, to avoid dismissal, a complaint against corporate directors must contain facts sufficient to allege that they breached their duties of due care or loyalty. *See id.* at 714–16. For instance, in *Davis*, the court found that the plaintiffs (homeowners in a condominium association) adequately alleged that the defendant directors violated their duty of due care because they alleged that the board failed to review the association's monthly bank statements. *Id.* at 715–16. The *Davis* court therefore declined to dismiss the plaintiff's case at the pleading stage based on the business judgment rule. *Id.*

Here, the Court finds that Rokowsky has pleaded sufficient facts to preclude dismissal based on the business judgment rule. The Complaint alleges that several directors sat on both sides of the relevant transactions. Several Individual Defendants served on the boards of both Members

12

Mutual and Vericity, the company that acquired all of Members Mutual's shares. (*See* Compl. ¶¶ 23–25.) Some Individual Defendants also held positions at companies affiliated with Apex Holdco, which acquired a majority of Vericity's shares. (*Id.* ¶¶ 20–22.) These allegations are sufficient to suggest that Defendants engaged in self-dealing. And under Illinois law, "[w]here directors sit on both sides of a transaction or otherwise engage in self-dealing they cannot rely on the protection of the business judgment rule." *M.D. Bldg. Material Co. v. 910 Constr. Venture*, 579 N.E.2d 1059, 1065 (Ill. App. Ct. 1991). Thus, the business judgment rule does not require dismissal at this stage and the Court proceeds to consider the substance of Rokowsky's fiduciary duty and negligence claims.

The elements of a breach of fiduciary duty under Illinois law are "(1) a fiduciary duty exists; (2) the fiduciary duty was breached; and (3) the breach proximately caused the injury of which the plaintiff complains." *Ball v. Kotter*, 723 F.3d 813, 826 (7th Cir. 2013) (citing *Neade v. Portes*, 739 N.E.2d 496, 502 (Ill. 2000)). The elements required to establish a negligence claim are very similar: a duty of care, a breach of that duty, and an injury proximately caused by the breach. *Marshall v. Burger King Corp.*, 856 N.E.2d 1048, 1053 (Ill. 2006) (citation omitted). The parties' briefs primarily address Defendants' alleged breach of fiduciary duty and dedicate much less space to negligence. That is likely because to the extent Defendants owed Rokowsky a duty of care for the purposes of a negligence claim, it was a fiduciary duty. Thus, the two claims essentially merge.

Defendants argue that Rokowsky's claims fail based on the first element because he has failed to plead that Defendants owed him or other Members Mutual members a fiduciary duty. Defendants cite a New York state case, *Fiala v. Metropolitan Life Insurance Co.*, for the proposition that "an insurance company does not owe its policyholder a common-law fiduciary

13

duty except when it is called upon to defend its insured." 776 N.Y.S.2d 29, 32 (N.Y. App. Div. 2004). In Illinois, too, "[i]t is well settled that no fiduciary relationship exists between an insurer and an insured as a matter of law." *Greenberger v. GEICO Gen. Ins. Co.*, 631 F.3d 392, 401 (quoting *Fichtel v. Bd. of Dirs. of River Shore of Naperville Condo. Ass'n*, 907 N.E.2d 903, 912 (Ill. App. Ct. 2009)). But here, Rokowsky is not alleging that Defendants owed him a fiduciary duty as his insurers. Instead, Defendants allegedly owed Rokowsky a fiduciary duty because he was relying on them to present a fair and accurate picture of the Plan for demutualization on which he and other members had to vote. Viewing the facts in the light most favorable to Rokowsky as the nonmoving party, the Court finds the facts sufficient to allege that Vericity, Members Mutual, Fidelity Life, and Individual Defendants owed him and other members a fiduciary duty. *See id.* ("A fiduciary duty may be created where one party places trust and confidence in another, thereby placing the latter party in a position of influence and superiority over the former" (citation and quotation marks omitted)); *Salder v. Retail Props. Of Am., Inc.*, Nos. 12 C 5882, 12 C 6433, 12 C 6743, 12 C 8091, 12 C 8522, 2014 WL 2598804, at *17 (N.D. Ill. June 10, 2014) (finding that the plaintiffs had sufficiently alleged there was a fiduciary duty because the defendants had provided the plaintiffs materials encouraging them to make certain investments, which went beyond an "ordinary arm's length business transaction").

      As to the second element of a breach of fiduciary duty claim, the Complaint essentially raises two possible breaches. First, as discussed above, the Complaint alleges that several Individual Defendants sat on both sides of the transactions at issue. Self-dealing, or appearing on both sides of the same transaction, is a basic violation of the fiduciary duty of loyalty. *See Howell v. Motorola, Inc.*, 633 F.3d 552, 566 (7th Cir. 2011). Thus, the breach element is met with respect to Rokowsky's allegations of self-dealing. However, the alleged self-dealing fails at the third

14

element of a breach of fiduciary duty claim—that the breach proximately caused the damage of which Rokowsky complains. The Complaint mentions that several Individual Defendants may have been personally interested in the transactions. But it fails to connect that fact to Rokowsky's alleged damages, which arise out of the restriction of his rights to buy more shares in Vericity. *See Sadler*, 2014 WL 2598804, at *18 (dismissing the plaintiffs' fiduciary duty claims because though they alleged numerous breaches, they "fail[ed] to connect any of the breaches to any damages").

The second potential breach Rokowsky alleges (and the issue at the heart of his Complaint) is that Defendants put their own interests above his by offering him and other members an unfairly low number of subscription rights to purchase Vericity stock. To determine if this conduct constitutes a breach of a fiduciary duty, the Court must determine if it undermines Defendants' obligation to act with "the utmost candor, rectitude, care, loyalty, and good faith." *Ball*, 723 F.3d at 832 (citing *Benson v. Stafford*, 941 N.E.2d 386, 397 (Ill. App. Ct. 2010)).

Defendants offered Rokowsky and his fellow members the right to purchase shares in Vericity at the same price that Vericity and Members Mutual directors and officers all paid. (Compl. ¶¶ 44–45.); *cf. Dixon v. ATI Ladish LLC*, 667 F.3d 891, 896 (7th Cir. 2012) (finding no breach of the duty of loyalty where directors "sold their own shares as part of the merger, receiving the same price as outside investors" because their interests "were aligned with those of all other shareholders"). Rokowsky does not allege that Defendants misrepresented the Plan to members or benefitted from a more favorable share price than members.[3] *See, e.g.*, *Regnery v. Meyers*, 679 N.E.2d 74, 80 (Ill. App. Ct. 1997) (finding that the defendant breached his fiduciary

---

[3] The Complaint hints that Defendants violated their duty of candor by presenting the Plan for Apex Holdco to purchase remaining outstanding shares as a possibility when in fact it was an inevitability. (*See* Compl. ¶ 70 (describing the Prospectus's acknowledgment that Apex Holdco would purchase a majority of Vericity's shares in the event of an undersubscription as "not a forecast, but the plan").) But the Complaint does not allege that Defendants' materials contained any false statements. Defendants told members that Apex Holdco was the stand-by purchaser and that it would purchase as many outstanding shares as were required to meet a certain amount, all of which was true.

duty to minority stockholders by causing the voting trust to sell himself stock for below its fair market value). While Rokowsky claims that he was unfairly excluded from Vericity's one-time cash distribution, the Complaint concedes that he benefitted from the distribution; he simply did not receive the same cash distribution that he would have if he had purchased a greater number of shares. (*See* Compl. ¶¶ 81–82.) Thus, the Court finds that the allegations concerning Rokowsky's subscription rights fail to allege a breach of a fiduciary duty.

Overall, Rokowsky's allegation that Defendants did not allow him to buy as many shares as he would have liked or as the statute permitted does not rise to the level of a breach of a fiduciary duty. Counts II and III of Rokowsky's Complaint are therefore dismissed for failure to state a claim.

## IV. Breach of Contract and Unjust Enrichment

Count IV alleges that Vericity, Members Mutual, and Fidelity Life breached a contract with Rokowsky and other members by failing to offer them the statutory maximum number of subscription rights. Count V is a claim for unjust enrichment against all Defendants.

The elements of a breach of contract claim in Illinois are "(1) offer and acceptance, (2) consideration, (3) definite and certain terms, (4) performance by the plaintiff of all required conditions, (5) breach, and (6) damages." *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 560 (7th Cir. 2012) (quotation marks and citations omitted). Defendants do not dispute that there is a valid contract between the parties, but they argue that Rokowsky's claim fails on the fifth element—breach. The Complaint alleges that Defendants failed to offer Rokowsky the statutory maximum number of subscription rights despite their contractual relationship, well-established business practices, their prior course of dealings, and their settled expectations. (Compl. ¶ 122.)

16

"[I]n alleging a breach of contract, a plaintiff's pleadings must allege facts sufficient to indicate the terms of the contract claimed to have been breached." *Elson v. State Farm Fire & Cas. Co.*, 691 N.E.2d 3d 807, 811 (Ill. App. Ct. 1998). Rokowsky's Complaint merely refers to vague obligations (like "well established business practices") without specifying when or where Defendants ever promised to give Members Mutual members the statutory maximum number of subscription rights. In his response brief opposing the motion to dismiss, Rokowsky cites a Seventh Circuit concurrence in asserting that a "breach of contract" claim covers breaches of the implied covenant of good faith and acts that are contrary to the reasonable expectations of the parties. *See Wilson v. Career Educ. Corp*, 729 F.3d 665, 674 (7th Cir. 2013) (Darrow, J., concurring). But again, the Complaint does not set forth any facts plausibly suggesting that the principle of good faith or Rokowsky's reasonable expectations required Defendants to offer him a certain number of subscription rights. His claim for breach of contract is thus dismissed.

Finally, to state a claim for unjust enrichment, Rokowsky must plead facts sufficient to allege that the "defendant has unjustly retained a benefit to the plaintiff's detriment, and that [the] defendant's retention of the benefit violates the fundamental principles of justice, equity, and good conscience." *Stefanski v. City of Chicago*, 28 N.E.3d 967, 980 (Ill. App. Ct. 2015) (citation and quotation marks omitted). The theory of unjust enrichment is grounded in the concept of an implied contract. *People ex rel. Hartigan v. E & E Hauling, Inc.*, 607 N.E.2d 165, 177 (Ill. 1992). The doctrine requires the plaintiff to "show that [the] defendant voluntarily accepted a benefit which would be inequitable for him to retain without payment." *Id.* Unjust enrichment does not apply where a contract already exists between the parties. *Id.* Since Rokowsky has alleged that he has a contract with Vericity, Members Mutual, and Fidelity Life, his unjust enrichment claim cannot stand against those Defendants. But more importantly, Rokowsky has not set forth any

facts plausibly suggesting that *any* Defendant accepted a benefit that must be returned to Rokowsky under principles of equity. As discussed above, the Complaint does not plead facts suggesting an implied obligation on Defendants' part to offer Rokowsky and other Members Mutual members the statutory maximum number of subscription rights to shares in Vericity. Count V of the Complaint is thus dismissed as to all Defendants.

## CONCLUSION

The Court finds that Rokowsky's Complaint fails to state a claim under the Illinois Insurance Code and Illinois common law. Defendants' motion to dismiss pursuant to Rule 12(b)(6) is therefore granted. (Dkt. No. 32.) Rokowsky's claims are dismissed. The dismissal is without prejudice to Rokowsky filing an amended complaint that remedies the deficiencies discussion in this opinion, if he believes he can do so consistent with his obligations under Federal Rule of Civil Procedure 11.

ENTERED:

Dated: September 29, 2022

_____
Andrea R. Wood
United States District Judge